[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1405 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1406 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1407 
OPINION
Amber G., the mother of Sabrina H., Dakota H., Ashley L., Christina L., and Christopher G., appeals the juvenile court orders that detained and placed some of her children in Mexico after they were taken into protective custody.
Amber contends that detention and placement of dependent children in a foreign country is inimical to juvenile court law and the court lacked jurisdiction to place the children in a Mexican residence without adequate background checks of the caregiver. Amber also contends the detention of her children in Mexico violated the statutory requirements of prior notice to the parent and a showing of good cause for a placement outside of San Diego. Additionally, Amber contends the court abused its discretion in placing the children in the Mexican home of the caregiver.
 FACTS
On March 28, 2006, Dakota, then 11 years old, was admitted to a hospital psychiatric ward for children after he threatened to kill Amber, his half siblings and Christopher's father. The hospital was ready to release Dakota on April 5, but Amber refused to pick him up and bring him home because she was afraid for her other children. On April 10, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition on behalf of Dakota, alleging he had a mental disorder requiring mental health treatment and did not have a parent capable of providing appropriate care. (Welf. Inst. Code,[1] § 300, subd. (c).) *Page 1408 
On May 2, at the jurisdictional hearing, Amber submitted to Dakota's petition on the basis of the social worker's reports. The court continued the jurisdictional hearing and the dispositional hearing pending the results of a psychological evaluation of Dakota.
On May 30 police responded to a call reporting a family disturbance at the home of Amber and Christopher's father. Christopher's father was lying in the front yard, and Amber was sitting on the patio. Amber smelled of alcohol and her speech was slurred when she talked to police. Amber said she and Christopher's father had been together for several years and had been involved in approximately 200 domestic violence incidents. Amber said they had been fighting on and off for the last four days, and he had hit her and the children. According to Amber, Christopher's father pushed Christopher, then two years old, to the floor on one occasion, and Ashley, then nine years old, to the floor on another occasion.
On June 1 Agency took Sabrina, Ashley, Christina and Christopher into protective custody. They were detained in two foster homes. On June 5 Agency filed dependency petitions on behalf of these four children, alleging they were at substantial risk of harm because they were periodically exposed to domestic violence in the home and their parents used alcoholic beverages to excess. (§ 300, subd. (b).) In Ashley's petition, the section 300, subdivision (b) allegation also included a separate count alleging that her stepfather had subjected her to physical abuse. Christopher's petition also contained an allegation that he had suffered or was at substantial risk of suffering serious physical harm inflicted nonaccidentally by his father. (§ 300, subd. (a).) Sabrina's, Ashley's and Christina's petitions contained an allegation that each of them was at substantial risk of being abused based on the physical abuse of Christopher. (§ 300, subd. (j).)
On June 8 Alfredo G., Christopher's paternal grandfather, told the social worker that he was willing to care for all five children. Alfredo said he had a house in Ensenada, Mexico, which could accommodate the children, and sufficient income to provide for them. Alfredo said all of the children except Dakota had spent 10 days in his home during Easter vacation. According to the social worker, the children indicated they were willing to go to Alfredo's home. Agency requested Desarrollo Integral de la Familia (DIF), a Mexican social services agency, to conduct an evaluation of Alfredo's home.
On June 15 Agency received the DIF evaluation of Alfredo's home. The evaluation was very favorable, and DIF agreed to supervise the case on a monthly basis while the children were in Mexico. According to the DIF *Page 1409 
report, Alfredo was 64 years old and retired. Since 1999 Alfredo lived with Beth C, whom he had known for 20 years. Beth was 56 years old and had completed two years of college. Alfredo and Beth denied having any criminal history.
The DIF report stated that Alfredo and Beth's home had three bedrooms and three bathrooms, a dining room, a receiving room, a kitchen, a laundry room and a carpentry workshop. The neighborhood was peaceful and the house was close to a primary school and a medical center. The DIF report indicated Alfredo and Beth had sufficient means to pay for the medical care of the children.
Agency adopted the DIF recommendation that the children be detained with Alfredo in Mexico.
On June 27, at the jurisdictional/dispositional hearing for the children, Amber, who opposed placement of the children in Mexico, requested a trial. After Amber's counsel questioned whether the court had the authority to place the children in a foreign country before it took jurisdiction over the children, the court acknowledged counsel had presented a legal issue. Nonetheless, the court granted Agency discretion to detain the children with Alfredo in Mexico. The court suggested that Amber could challenge its ruling by filing a writ petition.[2]
On July 20, at the contested jurisdictional/dispositional hearing for Sabrina, Ashley, Christina and Christopher, the court sustained the dependency petitions and found the allegations of each child's petition to be true by clear and convincing evidence. The court continued the dispositional hearing until the home evaluation of the maternal grandmother was completed.[3]
By early August, Sabrina and Ashley, who were having emotional problems, were in foster homes in San Diego County. Christina and Christopher remained in Mexico under the care of Alfredo.
Amber did not attend the contested dispositional hearing on August 3, and the matter was submitted. The court declared Sabrina, Ashley, Christina and Christopher dependent children, removed them from Amber's custody *Page 1410 
and ordered Amber to comply with her case plan.[4] The court placed Sabrina and Ashley in a licensed foster home and ordered psychological evaluations of the girls. The court placed Christina and Christopher with Alfredo in Mexico.[5]
On August 7, Timothy L., the father of Ashley and Christina, telephoned the juvenile court and requested counsel be appointed to represent him. The court granted the request.
On August 18, Timothy, who lived in North Carolina, appeared in juvenile court and requested presumed father status and an expedited evaluation of his home under the Interstate Compact on the Placement of Children (ICPC). The court granted Timothy presumed father status in Ashley's and Christina's cases, and ordered an expedited ICPC evaluation of his home.
The social worker contacted Alfredo about bringing Christina to San Diego County for a visit with Timothy. Alfredo responded that he was unable to do so before Timothy returned to North Carolina. Alfredo said if he brought Christina to the United States he would have to leave her in this country to be placed in a new home. Christina told the social worker that she did not want to leave her placement with Alfredo for a visit with Timothy until he was evaluated and approved. Christina said she did not want to be moved back and forth from homes where she did not know the caregiver.
 DISCUSSION I. Placement of Dependent Children in Mexico Is Not Contrary to the Interests of Dependency Law
Amber contends the juvenile court lacked the authority to detain or place the children in Mexico because the juvenile law, by not expressly providing for the detention and placement of dependent children outside the United States, implicitly prohibits such placements. Amber also contends placement of dependent children in foreign countries is inimical to the primary purpose of the juvenile law — namely, preservation of the family. These contentions lack merit. *Page 1411 
We reject Amber's statutory construction argument based on the maxim expressio unius est exclusio alterius, which means "`the expression of certain things in a statute necessarily involves exclusion of other things not expressed.'" (Dyna-Med, Inc. v. Fair Employment Housing Com.
(1987) 43 Cal.3d 1379, 1391, fn. 13 [241 Cal.Rptr. 67,743 P.2d 1323].) First, the application of this statutory construction tool to an entire code is questionable. The maxim expressiounius est exclusio alterius is generally applied to a specific statute, which contains a listing of items to which the statute applies. "`Under the familiar rule of construction,expressio unius est exclusio alterius, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed.'" (MutualLife Ins. Co. v. City of Los Angeles (1990) 50 Cal.3d 402,410 [267 Cal.Rptr. 589, 787 P.2d 996]; see also People v.Johnson (1988) 47 Cal.3d 576, 593 [253 Cal.Rptr. 710,764 P.2d 1087] [" `[u]nder the doctrine of expressio unius estexclusio alterius we must infer that the listing of terms and conditions is complete, and that there are no additional requirements which bind petitioner'"].) Our Supreme Court has characterized the maxim of expressio unius est exclusioalterius as a "mere guide" to be utilized when a statute is ambiguous. (Dyna-Med, Inc. v. Fair Employment Housing Com., supra, 43 Cal.3d at p. 1391.)
There are other limitations to this maxim of statutory construction. "`[T]he maxim expressio unius est exclusioalterius is inapplicable . . . "where no reason exists why persons and things other than those enumerated should not be included, and manifest injustice would follow by not including them. . . ."'" (People v. Reed (1996) 13 Cal.4th 217,227 [52 Cal.Rptr.2d 106, 914 P.2d 184].) Further, in Estateof Banerjee (1978) 21 Cal.3d 527, 539 [147 Cal.Rptr. 157,580 P.2d 657], the Supreme Court noted: "It is true that the canon of construction upon which respondent rests its case should be applied `where appropriate and necessary to the just enforcement of the provisions of a statute.' [Citation.] Nevertheless, expressio unius est exclusio alterius is no magical incantation, nor does it refer to an immutable rule. Like all such guidelines, it has many exceptions. . . ." (3) The high court listed some of the exceptions as follows: "The rule is inapplicable: where no manifest reason exists why other persons or things than those enumerated should not be included and thus exclusion would result in injustice [citation]; to a statute the language of which may fairly comprehend many different objects, some of which are mentioned merely by way of example, without excluding others of similar nature [citation]; to a matter which is only incidentally dealt with in a statute [citation]; where its application would run counter to a well *Page 1412 
established principle of law." (Id. at p. 539, fn. 10.) (4) In In re Michael G. (1988) 44 Cal.3d 283, 291
[243 Cal.Rptr. 224, 747 P.2d 1152], the Supreme Court observed: "`This rule, of course, is inapplicable where its operation would contradict a discernible and contrary legislative intent.'"
Amber does not point to any specific statute that lists a series of permissible placements and omits placements in foreign countries. Applying the maxim expressio unius estexclusio alterius to the Welfare and Institutions Code to prohibit foreign placement of dependent children would be at odds with the legislative intent and with basic goals of juvenile court law — namely, to protect and serve the best interest of dependent children. (See § 202.) Amber has not pointed to the existence of any manifest reason supporting a ban on child placements in a foreign country. If a foreign placement is in the best interest of a child, such a ban would result in an injustice. For all these reasons, we decline to apply the maxim expressio unius est exclusio alterius
to the Welfare and Institutions Code and thereby read an implicit ban on placing dependent children in foreign countries. Adding language into a statute "violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes." (Security Pacific NationalBank v. Wozab (1990) 51 Cal.3d 991, 998
[275 Cal.Rptr. 201, 800 P.2d 557].) "`It is . . . against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute.'" (In reRudy L. (1994) 29 Cal.App.4th 1007, 1011
[34 Cal.Rptr.2d 864].) In other words, had the Legislature intended a ban on placement of dependent children in a foreign country, it could have explicitly enacted one.
Furthermore, although there is no explicit statute in the Welfare and Institutions Code (which contains much of juvenile dependency law) providing for placement of dependent children in foreign countries, there are statutory provisions regarding such placements in the Uniform Child Custody Jurisdiction and Enforcement Act (the Act). (Fam. Code, § 3400 et seq.) The Act applies to juvenile dependency proceedings and international custody disputes. (In re Stephanie M.
(1994) 7 Cal.4th 295, 310 [27 Cal.Rptr.2d 595, 867 P.2d 706].) Foreign countries are treated as states for jurisdictional purposes. (Fam. Code, § 3405, subd. (a).) California courts have subject matter jurisdiction under the Act when California is the "home state" of the children (Fam. Code, § 3421, subd. (a)).[6] *Page 1413 
Amber's statutory arguments also ignore published case law that recognizes foreign placement of dependent children. For example, in In re Angelica V. (1995)39 Cal.App.4th 1007, 1010 [46 Cal.Rptr.2d 295], this court affirmed the adoption of the dependent children by the grandmother, who moved with the children to Mexico. Also, in In re StephanieM., supra, 7 Cal.4th at pages 314 to 316, the Supreme Court implicitly recognized placement of dependent children in Mexico as an option available to the juvenile court.
Contrary to Amber's argument, the placement of a dependent child in a foreign country is not necessarily inimical to the juvenile dependency law's goal of reunification and does not necessarily stifle frequent visitation for parents. We realize visitation is an important component of reunification. However, in communities that are located along the border, such as San Diego County, placement of the child in the neighboring country may result in shorter distances for the parent to travel than placement in another county or a different state. Further, placement of children with relatives or nonrelative extended family members is preferred over foster care. (See § 361.3.)[7] In some cases, the child has no relatives other than those living in the foreign country. Prohibiting all placements of dependent children in a foreign country would deprive those children of being placed with relatives and nonrelative extended family members, which is contrary to the legislative goal of promoting placement of dependent children with relatives by giving such placements preferential consideration. (See fn. 7, ante.)
Amber has not shown that foreign placements of dependent children is contrary to the interests of juvenile dependency law. *Page 1414 
 II. Criminal and Child Abuse Background Checks Should Have Been Conducted Before Placing Children With Alfredo in Mexico
Amber contends the juvenile court erred by (1) detaining Sabrina, Ashley, Christina and Christopher in Alfredo's home before required criminal and child abuse background checks of him and Beth had been completed, and (2) placing Christina and Christopher in Alfredo's home before the required background checks were completed. Agency counters that the issues are moot.
 A. Detention Orders — Unlike Placement Orders — Were Proper
The record on appeal supports Agency's mootness argument with respect to the detention of the children in Alfredo's home. This is an appeal of the judgment following a dispositional hearing of the children; hence, the dispositional hearing has taken place. (See In re Richard D. (1972)23 Cal.App.3d 592, 595 [100 Cal.Rptr. 351] [erroneous failure to follow detention hearing procedural requirements rendered moot by subsequent jurisdiction and disposition proceedings].) Furthermore, by the time of the dispositional hearing, Sabrina and Ashley were no longer living in Alfredo's home; they were in foster care.[8]
Ordinarily, we do not address moot issues; however, in this case we reach the issue because it is important to distinguish the standards applicable to detaining dependent children in a relative's home before the dispositional hearing and the standards applicable to placing dependent children in a relative's home at the dispositional hearing.
The propriety of an order detaining a dependent child in a relative's home is subject to the provisions of section 309, subdivision (d). (In re Miguel E. (2004)120 Cal.App.4th 521, 541-542 [15 Cal.Rptr.3d 530].)[9] "Section 309, subdivision (d) concerns the Agency's assessment and approval of a relative's home for `temporary placement of the child pending the detention hearing.'" (In re Miguel K,supra, at p. 542, citing § 309, subd. (d)(1); see also § 319, subd. (f)(3).)
Section 309, subdivision (d)(1) provides in pertinent part: "If an able and willing relative, as defined in Section 319, or an able and willing nonrelative *Page 1415 
extended family member, as defined in Section 362.7, is available and requests temporary placement of the child pending the detention hearing, the county welfare department shall initiate an assessment of the relative's or nonrelative extended family member's suitability, which shall include an in-home inspection to assess the safety of the home and the ability of the relative or nonrelative extended family member to care for the child's needs, and a consideration of the results of a criminal records check conducted pursuant to subdivision (a) of Section 16504.5 and a check of allegations of prior child abuse or neglect concerning the relative or nonrelative extended family member and other adults in the home."
Section 309, subdivision (d)(3) provides: "If a relative or nonrelative extended family member meets all other conditions for approval, except for the receipt of the Federal Bureau of Investigation's criminal history information for the relative or nonrelative extended family member, and other adults in the home, as indicated, the county welfare department may approve the home and document that approval, if the relative or nonrelative extended family member, and each adult in the home, has signed and submitted a statement that he or she has never been convicted of a crime in the United States, other than a traffic infraction as defined in paragraph (1) of subdivision (a) of Section 42001 of the Vehicle Code. If, after the approval has been granted, the department determines that the relative or nonrelative extended family member or other adult in the home has a criminal record, the approval may be terminated."
The procedures followed here were in substantial compliance with section 309, subdivision (d)(3). After Alfredo came forward and offered his home for the placement of his grandson and Amber's other children, Agency contacted DIF, which is its counterpart in Mexico, and arranged for a home evaluation of Alfredo. With respect to the required criminal background checks, Alfredo and Beth denied having a criminal history. Under section 309, subdivision (d)(3), such self-representations were sufficient. DIF recommended the children be detained there based on these and other factors, and Agency adopted the recommendation.
Given the temporary nature of detentions, and the Legislature's recognition of the need for different standards in evaluating homes for detention and for placement of dependent children (see fn. 9, ante), the detention orders here were proper. If the circumstances warrant it, under *Page 1416 
section 309, subdivision (d)(3), courts are authorized to detain a child with relatives or nonrelative extended family members in a prospective home prior to formal criminal background checks as long as the adults living in that home claim they have no criminal history other than traffic infractions.
 B. Record on Appeal, Augmentation Request and Judicial Notice
With respect to Christina and Christopher's placement orders, Agency asks us to (1) augment the record on appeal with the social worker's postjudgment report prepared for the six-month review hearing originally scheduled in December 2006, and (2) rely on the information in the report to find the background check issues as to these two children are moot as well. Amber objected to Agency's augmentation request.[10] We agree with Amber that it would be inappropriate to augment the record with the social worker's report. Doing so would effectively put us in the role of fact finder, which properly belongs to the juvenile court. (In re Jennifer A. (2002)103 Cal.App.4th 692, 703-704 [127 Cal.Rptr.2d 54].) "Making the appellate court the trier of fact is not the solution." (Id. at p. 703.)
Appellate courts rarely accept postjudgment evidence or evidence that is developed after the challenged ruling is made. (See In re Zeth S. (2003) 31 Cal.4th 396, 405, 413-414
[2 Cal.Rptr.3d 683, 73 P.3d 541] (Zeth S.).) TheZeth S. court set forth the general rule that "`an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an `essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal." (Id. at p. 405.)
Zeth S. was primarily concerned with postjudgment evidence aimed at a reconsideration of the lower court's factual findings and ultimately a reversal of the judgment. (Zeth S., supra, 31 Cal.4th at p. 413; see In reJosiah Z. (2005) 36 Cal.4th 664, 676 [31 Cal.Rptr.3d 472,115 P.3d 1133].) Here, the postjudgment evidence proffered by Agency is aimed at showing the issue is moot, and it does not seek a reversal of the judgment. Nonetheless, given the hearsay nature of the social worker's report and no showing that Amber had an opportunity to cross-examine the social worker (seeIn re Malinda S. (1990) 51 Cal.3d 368, 384-385
[272 Cal.Rptr. 787, 795 P.2d 1244]), we deny Agency's motion to augment the record on appeal. *Page 1417 
However, on our own motion, we take judicial notice of the January 19, 2007 juvenile court minute order in Christina's case, which reads in pertinent part: "Minor is placed with the father." (See Evid. Code, §§ 452, subd. (d), 459, subds. (a), (c); see also Boghos v. Certain Underwriters atLloyd's of London (2005) 36 Cal.4th 495, 505, fn. 6 [30 Cal.Rptr.3d 787, 115 P.3d 68].)[11] Because we consider the minute order not as a basis to reverse, but to show that events occurring during the appeal render Amber's contention as to Christina moot, taking judicial notice here is not prohibited by Zeth S., supra, 31 Cal.4th 396.
The issue of whether required background checks were conducted before placement is not moot as to Christopher. Further, even if it were, we would still address the substantive issue because it is an issue of continuing public concern and is likely to recur. (See In re Christina A. (2001)91 Cal.App.4th 1153, 1159 [111 Cal.Rptr.2d 310].)
 C. Adequate Background Checks Were Not Conducted Prior to Placement
Section 361.4, known as the Lance Helms Child Safety Act of 1998, is intended to protect dependent children who are in out-of-home placements with relatives or other individuals other than licensed or certified facilities. (Los AngelesCounty Dept. of Children Family Services v. SuperiorCourt (2005) 126 Cal.App.4th 144, 150-151
[24 Cal.Rptr.3d 256].) Before a child is placed in a home other than a licensed or certified foster home, the child services agency must conduct a criminal records check on all adults living in the potential home, and on any other known adult who may have significant contact with the child or who has a familial or intimate relationship with anyone living in the potential home. (§ 361.4, subd. (b).) Within 10 days, the agency must follow this records check with a fingerprint clearance to ensure accuracy of the criminal records check. (Ibid.) If the criminal records check and the fingerprint clearance show no criminal record, the child services agency and the court may consider the home for placement of a child. (§ 361.4, subd. (d)(1).) If the fingerprint clearance check shows that the individual has been convicted of a crime other than a minor traffic offense, the child shall not be placed in the home, unless a criminal records exemption has been granted by the appropriate authorities. (§ 361.4, subd. (d)(2).) *Page 1418 
The record shows Agency did not comply with section 361.4. Agency asked DIF to conduct an evaluation of Alfredo's home. A week later, Agency received a glowing evaluation by DIF, indicating Alfredo had a spacious home in a peaceful neighborhood and adequate means to provide for four of the children. Also, Alfredo and Beth denied having any criminal history. But Agency cannot properly rely on a self-report of no criminal history for placement purposes under section 361.4. Section 361.4 requires a review of criminal records and a fingerprint clearance check before a child can be detained or placed in an unlicensed or noncertified home. For purposes of placement, the DIF evaluation, absent criminal background checks comparable to those required under section 361.4, was inadequate.[12]
The court erred by placing Christina and Christopher in Alfredo's home without the required criminal background checks or comparable criminal record checks used in Mexico. (See fn. 12, ante.) As to Christina, the issue is moot, and we dismiss the appeal pertaining to her on this issue. However, it is not moot as to Christopher; accordingly, we reverse his placement order and remand his case with directions that the juvenile court instruct Agency to show (1) the mandatory background criminal checks required in section 361.4 or comparable criminal record checks used in Mexico of Alfredo and Beth have been conducted, and (2) these individuals do not have any criminal history other than minor traffic violations. Upon a proper showing, the court shall reinstate Christopher's placement order, if appropriate.
 III. Lack of Required Statutory Notice of Intent Is Harmless Error in This Case
Amber contends Agency did not give her required notice of its plans to have the children detained in Mexico with Alfredo and did not make a showing of good cause for detaining the children outside of San Diego County. Although Amber has shown noncompliance with section 361.2, we find Amber has waived this issue and any error was harmless. *Page 1419 
Section 361.2 requires that children shall not be placed outside the county of their residence unless notice is given and factual findings supporting such placement are made.[13]
Agency argues that Amber has waived or forfeited the assignment of error because she did not object on this ground below. Amber was present at the June 27, 2006, hearing when the court ordered the children detained in Alfredo's home in Mexico. Amber did not object on the basis of lack of notice or noncompliance with section 361.2. We agree with Agency that Amber waived the issue. (In re K.D. (2004)124 Cal.App.4th 1013, 1018 [21 Cal.Rptr.3d 711]; see also In reDakota H. (2005) 132 Cal.App.4th 212, 222
[33 Cal.Rptr.3d 337].)
Putting aside the waiver issue, we agree Agency did not comply with the time requirements of section 361.2 with respect to the detention of Sabrina, Ashley, Christina and Christopher in the Mexican home of Alfredo. Agency did not give Amber or her counsel written notice of its intent to detain the children outside the county at least 14 days prior to the detention.
The question remains whether Agency's noncompliance with the notice requirements of section 361.2 was harmless in this case.
Errors in notice of dependency proceedings do not automatically require reversal; instead, we assess such errors to determine whether they are harmless beyond a reasonable doubt. (In reDaniel S. (2004) 115 Cal.App.4th 903, 912-913
[9 Cal.Rptr.3d 646]; In re Angela C. (2002)99 Cal.App.4th 389, 393-394 [120 Cal.Rptr.2d 922].) Amber was present and had the opportunity to object at the June 27, 2006, hearing in which the children were detained in Alfredo's home in Mexico. Amber has not demonstrated that she was prejudiced by Agency's noncompliance with section 361.2, subdivision (g). We conclude Agency's failure to give timely notice of its intent to detain the children in the Mexican home of Alfredo was harmless beyond a reasonable doubt.
Citing Judith P v. Superior Court (2002)102 Cal.App.4th 535 [126 Cal.Rptr.2d 14] (Judith P.), Amber contends we should deem noncompliance *Page 1420 
with section 361.2, subdivision (g) as structural error, requiring per se reversal. In Judith P., the juvenile court, at a status review hearing, terminated the mother's reunification services and denied her request for a continuance and a contested hearing. (Judith P., supra,102 Cal.App.4th at pp. 543-544.) The Court of Appeal held that the child welfare agency's failure to serve the mother with the hearing status report at least 10 days before the status review hearing as required by statute constituted structural error, requiring per se reversal because it prevented mother from preparing her defense. (Id., at pp. 553-558.)[14]
Even assuming that Judith P. is still good law after the Supreme Court's decision in In re Celine R.,supra, 31 Cal.4th at pages 58-59 (see fn. 14,ante), the facts of Judith P. are distinguishable from the facts in this case. Judith P.
involved an order terminating services and denial of requests for a continuance and contested hearing. The Court of Appeal noted: "It is fundamentally unfair to terminate either a parent's or a child's familial relationship if the parent and/or child has not had an adequate opportunity to prepare and present the best possible case for continuation of reunification services and/or reunification." (Judith P.,supra, 102 Cal.App.4th at pp. 557-558.) This case involves a detention order, which is a temporary order that lasts only until the placement decision is made in a dispositional order.[15] Moreover, there was no request for a continuance, and the court did not deny Amber a contested hearing on the issue of Agency's jurisdictional/dispositional recommendations. We decline to apply the Judith P. analysis here.
 IV. Detention and Placement Orders Were Within the Court's Discretion
Amber contends the juvenile court's orders detaining and placing the children in Mexico were absurd and, therefore, constituted an abuse of the court's discretion. The contention is without merit.
A juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. (Alicia B. v. Superior *Page 1421 Court (2004) 116 Cal.App.4th 856, 863
[11 Cal.Rptr.3d 1].) The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. (In re Stephanie M., supra, 7 Cal.4th 295 at pp. 318-319.) A court has exceeded the bounds of reason by making an "`"arbitrary, capricious, or patently absurd determination. . . ."'" (Id. at p. 318.) "Broad deference must be shown to the trial judge. The reviewing court should interfere only `"if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did."'" (In re Robert L. (1993)21 Cal.App.4th 1057, 1067 [24 Cal.Rptr.2d 654].)
We reject the notion that the detention and placement orders were absurd and find there was no abuse of discretion. The court properly gave preferential consideration to placement with Alfredo, Christopher's grandfather, who came forward and offered to care for Sabrina, Dakota, Ashley, Christina and Christopher. (§ 361.3, subd. (a).) Although he was not related to Christopher's half siblings, Alfredo knew the half siblings, all of whom except Dakota had spent the recent Easter vacation with him. All of the children were willing to be placed with Alfredo. The DIF evaluated Alfredo's home and determined that he and Beth could properly care for the children. Alfredo and Beth were both retired, healthy and had known each other for 20 years. They had adequate income to provide for the children and a house that was large enough to accommodate the five children. These factors indicated it was in the children's best interests to be detained with Alfredo. The factors also indicated it was in the best interests of Christina, who was adamant at the time that she wanted to stay with Alfredo, and of Christopher, to be placed with Alfredo.
Amber complains that neither the court nor Agency would have authority over Alfredo and the power to control or regulate his care of the children. We are unpersuaded. DIF agreed to supervise the case on a monthly basis while the children were in Mexico. This is what DIF does; utilization of DIF services for dependent children placed in Mexico is well-established. For example, in In re Rosalinda C. (1993)16 Cal.App.4th 273, 276 [20 Cal.Rptr.2d 58], DIF reported the child to be in good condition on an unannounced home visit and followup call to the child's doctor. The Court of Appeal noted: "A juvenile court has a continuing responsibility to account for the welfare of a dependent child under its jurisdiction, wherever placed, unless and until a permanent and stable home is established." (Id. at p. 279.) Amber has not shown that the court and Agency, with the assistance of DIF, would not comply with their legal responsibilities and duties of ensuring the children's safety and best interests. Amber's claim is nothing more than speculation. *Page 1422 
Amber claims it was an abuse of discretion to detain Dakota, who had threatened to harm Amber and his half siblings, with the other children. Amber did not object to the detention on this point, and has therefore waived the claim. Moreover, the claim is moot because Dakota was returned to San Diego County at his dispositional hearing on July 20, 2006. (See fn. 3,ante.)
Amber claims that no provisions were made for the children's medical care while in Alfredo's home. The issue is moot as to all the children except Christopher. (See discussion in pt. II., ante.) In any event, the DIF report noted that a local medical clinic was nearby and "[t]he children will have medical services." We agree this information was vague. However, the report also noted that Alfredo and Beth had adequate income to provide for the children, and Alfredo indicated that he would pay for their medical care.
Amber claims placing the children in Mexico would frustrate or prevent her reunification services by restricting her ability to visit with the children. This claim is speculative. We are not persuaded otherwise by Amber's reliance on the incident in which Alfredo was not cooperative in setting up a visit with Christina's father on short notice.
Amber's reliance on "move-away" case law in family law is inapposite. We have already addressed the issue of background checks in part II., ante.
Amber has not met her burden of showing the court abused its discretion in detaining the children in the Mexican home of Alfredo and placing Christina and Christopher there.
 DISPOSITION
The placement order in Christopher's case is reversed and the case is remanded for the limited purpose of the juvenile court assuring that the mandatory criminal background checks and fingerprint clearances or comparable criminal background checks and clearances used by Mexican officials have been conducted on Alfredo and Beth, and that these two individuals do not have any criminal convictions other than traffic infractions. Once this is accomplished, the court shall reinstate Christopher's placement order absent new information showing that the placement has not been effective in protecting Christopher or the placement is not appropriate in view of the criteria listed in section 361.3, subdivision (a)(1). *Page 1423 
The challenge to Christina's placement in Mexico is dismissed as moot.
In all other respects, the orders and judgments are affirmed.
McConnell, P. J., and Huffman, J., concurred.
[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] Amber's counsel did not file a writ petition challenging the detention order. Counsel did file a notice of appeal with the superior court challenging the detention orders, but Amber later abandoned the appeal.
[3] In Dakota's contested dispositional hearing, the court found the allegation under section 300, subdivision (c) to be true by clear and convincing evidence. The court declared Dakota a dependent child, removed him from Amber's custody and placed him in a group home.
[4] In Christopher's case, the court ordered custody removed from Amber and his father. The court also ordered Christopher's father to comply with his case plan.
[5] In Christina's case, it was placement with a nonrelative extended family member. In Christopher's case, it was placement with a relative.
[6] "`Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. . . ." (Fam. Code, § 3402, subd. (g).)
[7] Section 361.3, subdivisions (a) and (c)(1) provide that when a child is removed from the physical custody of a parent, a relative's request for placement shall be given preferential consideration, i.e., shall be the first placement considered and investigated. In determining whether a relative placement is appropriate, the court shall consider the best interest of the child, the wishes of the parent and relative, the provisions of Family Code section 7950, the placement of siblings or half siblings in the home, the good moral character of the relative, the nature and duration of the relationship between the child and the relative, and the ability of the relative to inter alia provide a safe, secure and stable environment for the child, provide a home and the necessities of life, protect the child from the parents, facilitate visitation with other relatives and provide legal permanence. (§ 361.3, subd. (a)(1)-(7).) Placements shall, if possible, be made in the home of a relative, unless such placement would not be in the child's best interest. (Fam. Code, § 7950, subd. (a)(1).) If a juvenile court does not place a child with a relative who has been considered, it is required to state reasons why the placement was denied. (§ 361.3, subd. (e).)
[8] Dakota was placed in a group home on July 20, 2006.
[9] Placements of dependent children with respect to criminal background checks are governed by a different statute — section 361.4. (See pt. II.C., post.)
[10] Amber also filed a motion to strike the new evidence in the brief of the children's counsel. The motion is granted.
[11] On April 11, 2007, we informed the parties of our intention to take judicial notice of the January 19, 2007, minute order and afforded them the opportunity to object. (Evid. Code, § 459, subd. (c).
[12] We are unpersuaded by Agency's argument that a strict reading of section 361.4 is not required for placements in another state or in a foreign country. Of course, different procedures are followed in other jurisdictions and foreign countries. However, section 361.4 governs placement of dependent children who are placed outside California as well as in the state. In keeping with section 361.4, out-of-state placements must have some formal criminal back-ground check by the appropriate out-of-state government agency before a California court may place a child out of state. Further, having denied Agency's motion to augment the record on appeal with the postjudgment social worker's report, we cannot rely on information in the report. An appellate court reviews the correctness of a judgment when it was rendered. (Zeth S.,supra, 31 Cal.4th at p. 405.)
[13] Section 361.2, subdivision (g) provides: "Whenever the social worker must change the placement of the child and is unable to find a suitable placement within the county and must place the child outside the county, the placement shall not be made until he or she has served written notice on the parent or guardian at least 14 days prior to the placement, unless the child's health or well-being is endangered by delaying the action or would be endangered if prior notice were given. The notice shall state the reasons which require placement outside the county. The parent or guardian may object to the placement not later than seven days after receipt of the notice and, upon objection, the court shall hold a hearing not later than five days after the objection and prior to the placement. The court shall order out-of-county placement if it finds that the child's particular needs require placement outside the county."
[14] The Judith P. court relied heavily on criminal cases in holding the tardy delivery of the status report constituted structural error. The following year, our Supreme Court in In re Celine R. (2003) 31 Cal.4th 45, 58-59
[1 Cal.Rptr.3d 432, 71 P.3d 787], criticized case law that analogized criminal cases to dependency cases; the high court observed that such an analogy was inapt.
[15] We are not persuaded by Amber's argument that the detention order was a self-perpetrating order or one that made continued placement in Alfredo's Mexican home "a fait accompli" at the subsequent dispositional hearing. *Page 1424