Filed 5/13/13  In re Michael H. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re MICHAEL H., et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B244671 (Super. Ct. Nos. J068242, J068243) (Ventura County) |
| VENTURA COUNTY HUMAN SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>INEZ P.,<br><br>    Defendant and Appellant. | |

Inez P. (mother) appeals the juvenile court's order terminating her parental rights to her minor children Michael H. and M.H., and selecting a permanent plan of adoption.  (Welf. & Inst. Code, § 366.26.)**1**  Mother contends her due process rights were violated because she was not given notice of the date of the continued section 366.26 hearing.  We affirm.

FACTS AND PROCEDURAL HISTORY

On March 22, 2011, the Ventura County Human Services Agency (HSA) filed section 300 petitions as to newborn M.H. and her one-year-old brother Michael.

---

**1** All further statutory references are to the Welfare and Institutions Code.

The petition alleged that both mother and the children's father, Michael H., Sr.,[2] had a significant history of substance abuse and that M.H. was born prenatally exposed to methamphetamine. It was further alleged that father was unable to care for the children by reason of his incarceration. The court sustained the petitions and ordered reunification services for both parents.

In its six-month review report, HSA recommended that parents begin an extended visit with the children. HSA reported that both parents had completed parenting classes along with the initial phase of a residential drug treatment program, had provided clean drug tests, and were participating in counseling and attending AA/NA meetings. As a condition of the extended visit, the parents were to continue participating in the next phase of their residential treatment program. The court ordered continued services and gave HSA discretion to begin its recommended extended visit. The court made clear that the children would be returned to foster care if the parents left the treatment program prior to completion.

The extended visit began at the beginning of October 2011. On October 19, mother tried to leave the program with the children but was stopped by the police. On November 14, 2011, a program staff member was transporting the family in a van when she noticed that mother had not properly buckled M.H.'s car seat. The staff member pulled over and counseled mother and father on the proper way to buckle the seat. Mother and father were angered by this, so they got out of the van and simply walked away, leaving both children behind. Four days later, the social worker arranged for the parents to return to the program on the condition that they accept responsibility for their actions. Both parents refused, insisting that the staff member was to blame.

On November 25, 2011, mother was arrested for being under the influence of methamphetamine. After leaving the treatment program, she missed four of the five required drug tests and father missed all of them. Of the 11 possible visits with the children, mother attended five and father attended only one. Mother did not reenter drug

_____

[2] Father is not a party to this appeal.

treatment until February 15, 2012, while father did not return at all during the reporting period.

At the 12-month review hearing on March 19, 2012, HSA recommended that services be terminated for both parents and that the matter be set for a section 366.26 hearing. Mother was present at the hearing, while father did not attend. At mother's request, the matter was set for a contested hearing.

At the contested hearing, mother testified that she had been sober since January 31st and was working with a sponsor in a 12-step program. The court terminated reunification services and set the section 366.26 hearing for August 6, 2012. The court orally ordered mother to return for the hearing. The social worker also personally served mother with notice of the hearing.

Mother did not appear at the August 6th hearing. Father was present with counsel and requested a contested hearing. The matter was accordingly set for a contested hearing on August 30, 2012. When the court asked mother's counsel whether mother was joining in the contest, counsel replied, "I don't know at this point." HSA served mother notice of the August 30th hearing by mail.

Mother did not appear at the August 30th hearing, and counsel gave no explanation for her absence. The matter was trailed to September 5, 2012, at the request of father and HSA.

When the matter was called for hearing on September 5, 2012, mother's counsel once again announced that mother was not present and did not otherwise comment on her absence. Father was present with counsel. At the outset of the hearing, the court asked, "do we have proper notice findings for Mom?" Counsel for HSA responded that mother was actually present when the section 366.26 hearing was initially set for August 6th. The court then noted that the record expressly reflected that mother had been given notice of the continued hearing on August 30th, at which she also failed to appear. No mention was made of whether mother received notice that the hearing had been continued again until September 5th.

3

HSA submitted its report recommending termination of parental rights as to both children. The report noted among other things that mother had attended only half of her visits with the children from January 1, through July 25, 2012, while father had attended only one. Father presented the social worker's testimony indicating that although Michael H. had behavioral problems, the prospective adoptive parents had no reservations about adopting both children. Father testified that he had returned to his residential treatment program almost three months prior to the hearing. Father admitted, "I let my children down on various occasions" and added, "I'm more focused on getting myself right and continuing to have a positive relationship with my children and raising them."

At the conclusion of the hearing, father's counsel argued, "I think he's aware that the children are where they are for a reason and doesn't expect that things will change." When asked whether she had anything to add, mother's counsel responded, "I have no comment, your Honor." Counsel for the children argued that "[HSA's] recommendation is the only one that's legally appropriate." The court then proceeded to terminate parental rights and found that the children were adoptable and that no exception to adoption applied. Mother appealed.[3]

DISCUSSION

Mother contends the order terminating parental rights must be reversed because she was not provided actual notice of the continued section 366.26 hearing at which the order was entered. This claim is forfeited because it was not raised below. Moreover, the failure to give notice was plainly harmless.

"A 'reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that

_____

[3] Mother's pro per notice of appeal erroneously refers to a March 22, 2011, order. No such order was entered on that date; rather, it is the date that the section 300 petition was filed. Because it is clear that mother sought to appeal the order terminating parental rights and that HSA was not prejudiced or misled by the erroneous designation, we liberally construe the notice to protect mother's appeal. (*In re Joshua S.* (2007) 41 Cal.4th 261, 272; *In re Madison W.* (2006) 141 Cal.App.4th 1447, 1450-1451.)

they may be corrected. [Citation.] [¶] Dependency matters are not exempt from this rule.' [Citation.] The appellate court has discretion to excuse forfeiture, but it should be exercised rarely and with special care. [Citation.] Because juvenile dependency proceedings 'involve the well-being of children, considerations such as permanency and stability are of paramount importance. (§ 366.26.)' [Citation.]" (*In re X.V.* (2005) 132 Cal.App.4th 794, 804, fn. omitted.)

Mother's attorney was present at the hearing of which mother purportedly had no notice. Counsel gave no explanation for mother's absence, be it due to lack of notice or otherwise. Because an objection would have cured the error of which mother complains, her failure to object forfeits the issue. (*In re X.V., supra*, 132 Cal.App.4th at p. 804; see *In re B.G.* (1974) 11 Cal.3d 679, 689 [mother's objection to lack of adequate notice of dependency proceedings waived by counsel's failure to object and mother's subsequent stipulation to jurisdiction].)

Mother cites *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, for the proposition that "[w]hile the general rule prohibits raising a claim on appeal that was not raised below, where the claim involves due process, that right is not waived." *Sabrina H.* does not so hold. On the contrary, the court expressly found the appellant had waived or forfeited her notice claim by failing to object below. (*Id.* at p. 1419.)[4] Although the court went on to address the claim on the merits, it only did so to demonstrate that the lack of notice was in any event harmless. (*Ibid.*)

We reach the same conclusion here. "If the outcome of a [dependency] proceeding has not been affected, denial of a right to notice and a hearing may be deemed

---

**4** The appellant claimed she had not received proper notice under section 361.2, subdivision (h), which provides: "Whenever the social worker must change the placement of the child and is unable to find a suitable placement within the county and must place the child outside the county, the placement shall not be made until he or she has served written notice on the parent or guardian at least 14 days prior to the placement, unless the child's health or well-being is endangered by delaying the action or would be endangered if prior notice were given. The notice shall state the reasons which require placement outside the county. The parent or guardian may object to the placement not later than seven days after receipt of the notice and, upon objection, the court shall hold a hearing not later than five days after the objection and prior to the placement. The court shall order out-of-county placement if it finds that the child's particular needs require placement outside the county."

5

harmless and reversal is not required." (*In re James F.* (2008) 42 Cal.4th 901, 918; see also *In re A.D.* (2011) 196 Cal.App.4th 1319, 1325 ["[A] failure to give notice in dependency proceedings is subject to a harmless error analysis"].)

Here, any error in failing to give mother notice of the September 6th hearing was plainly harmless beyond a reasonable doubt. Mother did not attend the prior hearings of which she received actual notice, and offers nothing to demonstrate that her failure to attend the September 6th hearing was due to a lack of notice. Even if she had attended, everyone agreed that the evidence compelled the court to rule as it did. According to mother, she could have persuaded the court that the beneficial parental relationship exception to adoption applied. (§ 366.26, subd. (c)(1)(B)(i).) To make such a showing, she would have needed to show both (1) that she had maintained regular visitation and contact with the children; and (2) that the benefit of continuing the parent-child relationship outweighed the benefits of adoption. (*Ibid.*) Mother did not maintain regular visitation with the children. Moreover, M.H. was detained when she was two days old and Michael H. was only 17 months old. The children were only thereafter in mother's custody for a six-week period. By contrast, the children had spent the past 15 months in the home of their prospective adoptive parents. Their need for permanency and stability plainly favored that placement. As the children's attorney argued, HSA's recommendation that the children be freed for adoption was "the only one that's legally appropriate." Because mother offers nothing to undermine the court's finding in that regard, her alleged lack of notice of the hearing at which the court made its findings was harmless beyond a reasonable doubt.

The judgment (order terminating parental rights) is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

6

Tari L. Cody, Judge

Superior Court County of Ventura

_____


Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

Leroy Smith, County Counsel, Linda Stevenson, Assistant County Counsel, for Plaintiff and Respondent.