Filed 7/23/21  In re O.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re O.S. et al., Persons Coming Under the Juvenile Court Law. | C092562 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.S.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JVSQ191031, JVSQ191032, JVSQ191033) |

After exercising dependency jurisdiction over three siblings under Welfare and Institutions Code section 300,[1] the juvenile court removed them from their parents' care and ordered reunification services; we affirmed the jurisdiction and disposition orders.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

(*In re O.S. et al.* (May 14, 2020, C089820) [nonpub. opn.].)  S.S., the minors' mother, now challenges a visitation order entered at a 12-month review hearing.  She contends the juvenile court improperly delegated its judicial authority to determine visitation to the Yolo County Health and Human Services Agency (Agency).  She urges us to exercise our discretion to consider the issue since she failed to object to the visitation order below.

We conclude S.S. forfeited her claim by failing to object in the juvenile court, and that even if the claim had been properly preserved, a subsequent visitation order has rendered her challenge moot.  We therefore dismiss the appeal.

## BACKGROUND

In 2018, the Agency received multiple reports of neglect by S.S. (mother) and R.S. (father) of their three minor children, O.S. born in 2003, G.S. born in 2006, and K.S. born in 2007.  Mother had a history of mental health issues, and was showing signs of paranoia and delusions.  She homeschooled the minors with little outside interaction, and feared someone was stalking them and would abduct or murder the children.  Father often left the children alone with mother and was unable or unwilling to intervene to protect them from mother's delusional behaviors.

The Agency took the children into protective custody and filed a section 300 petition, alleging that the minors had suffered or were at a substantial risk of suffering serious physical harm or illness due to mother's mental health impairments and substance abuse issues; the petition further alleged that father was incapable of protecting the minors from mother's untreated mental illness.  Mother was placed on a section 5150 psychiatric hold after the children were removed from the home, which later was extended 13 days under section 5250.  At the time, she tested positive for amphetamines and tetrahydrocannabinol (THC).  She later refused to sign a release of her medical records related to the holds.

Following contested jurisdiction and disposition hearings in which mother testified, the juvenile court sustained the petition, declared the minors dependents, and

removed them from the parents' custody. The minors were placed with the maternal grandmother (grandmother), from whom mother was estranged. The court found mother's testimony and numerous denials not credible and ordered her to undergo a full psychological evaluation and start counseling; it also ordered family reunification services to both parents with a six-month review. Mother was given six hours per week of supervised visits with the minors.

Mother appealed, arguing insufficient evidence supported the juvenile court's jurisdictional findings and disposition order removing the minors from her custody. We affirmed the juvenile court's orders. (*In re O.S. et al., supra*, C089820.)

While mother's appeal was pending, the Agency filed an ex parte application under section 388 to suspend mother's visitation until her mental health had stabilized. According to the petition, mother had punched father in the face, had run after the minors after the dispositional hearing, startling them, and was verbally and physically abusive to grandmother. Mother had failed to provide the name of her mental health provider or sign a release of information; she would not indicate whether she would attend the court ordered psychological evaluation, claiming it was illegal. Father disagreed with the request to suspend visitation for mother.

After a hearing in which the grandmother and the social worker testified, the juvenile court reduced mother's supervised visitation to two hours per week. The court ordered the Agency to immediately refer mother to a counselor and to pay for the service, and ordered mother to attend the scheduled psychological evaluation.

In October 2019, father requested a restraining order against mother, with whom he still lived at the time. Father alleged that mother had slapped him so hard his glasses broke, repeatedly pounded on his locked bedroom door with such force that the door delaminated, physically prevented him from leaving places, and entered his room and stole important documents. In November 2019, the juvenile court granted father a no

3

harassment restraining order against mother, limited her educational rights, and ordered the children be immunized so they could attend school.

At a six-month review hearing in December 2019, the Agency asked to set a 12-month review hearing with continued family reunification services as to both parents. The Agency reported that mother had failed to obtain a second psychological evaluation as ordered by the court, and had a difficult time acknowledging her mental health issues. Mother had only signed a limited release for her therapy records, and the Agency had been unable to confirm her attendance or counseling goals. There had also been difficulties scheduling visits with mother, and the Agency received evidence that mother was trying to reach out to the minors by telephone and e-mail. Mother sent repetitive text messages chastising the Agency, court, or other entities that she perceived had wronged her; she had also called the social worker an abuser, trafficker, terrorist, or Nazi, and demanded that the minors be returned to her. She made inappropriate comments during visits, including about the case. In the Agency's estimation, mother was not progressing in her case plan.

Mother objected to lack of reasonable services, lack of visitation, and inaccurate information regarding the children requesting to attend public school; she requested a contested hearing. The juvenile court set a contested six-month review hearing in January 2020, and ordered mother to sign a release regarding her therapy.

A January 2020 addendum reported the firm providing supervision for mother's visits discontinued its services due to mother's problematic behavior during visits. She was often argumentative and confrontational during the visits, inappropriately discussed the case with the minors, badmouthed the Agency, the judge, and the social workers, and blamed others for the family's involvement with child welfare services. A second addendum filed in February 2020 reported that mother insisted on in-home visits due to her perceived health problems and tried to contact the minors outside the visitation schedule.

4

At the contested six-month review hearing on February 25, 2020, mother testified that she did not attend the scheduled psychological evaluation because she had car trouble and the social worker would not help her arrange transportation. She said she did not know she was ordered to drug test, and saw no need to drug test because she denied having a drug problem. She acknowledged that the minors were behind in public school, and said that if they were returned to her care she would continue to homeschool them with some type of outside meeting a few days a week. She denied sending them e-mails telling them to stay home from school, warning them not to be around any people, and also telling them not to get any more immunizations; she claimed her e-mail had been hacked. She testified that she had not taken the psychotropic medications prescribed to her after the section 5150 hold because she did not need them.

At the conclusion of the hearing, the Agency argued that mother had not made sufficient progress with her case plan, and that it would be detrimental to return custody to mother. It recommended continuing reunification services for both parents to the 12-month review. The minors' counsel agreed. Mother argued the minors should be returned to her because insufficient evidence showed they were still at risk. Alternatively, counsel argued the parameters of the psychological evaluation needed to be more clearly stated and that in-home visitation with mother should be reinstated. Father told the court that he had served mother with divorce papers, and that from his view they were entering counseling to learn to co-parent. He took no position on mother's requests, and asked to meet with the Agency to set up a transition plan for when he secured a separate residence.

The juvenile court continued reunification services for another six months. The court ordered mother to participate in two supervised visits outside the home, and if those were successful, then she could progress to at-home supervised visits that did not interfere with the minors' school schedule. The court granted the Agency authority to

schedule unsupervised overnight visits and an extended overnight visit with father, and to work on a transition plan with father.

At the 12-month hearing in June 2020, the Agency recommended that the children be placed with father with family maintenance services, and that services for mother be terminated. As relevant here, the Agency further requested that mother's visitation be suspended as detrimental due to her problematic behavior. She continued to be verbally aggressive towards the social worker, visitation monitors, and other child welfare staff. Her last four supervised visits were ended early because she continued to violate visitation policies by discussing the case, making reports about father, and berating the minors. The Agency felt she had not demonstrated behavioral changes to create or maintain safety given her ongoing mental health struggles and minimal participation in the court ordered case plan.

Mother's counsel objected to the recommendations and opposed placing the children with father and terminating her services. On the issue of visitation, the social worker explained that telephonic visits with mother were often cut short because she would not stop discussing father or the case. She would often yell at the supervising social worker and the minors, berating them for not writing to her or telling them that they were dead to her.

The juvenile court granted a one-year restraining order protecting father against mother and set a contested 12-month hearing. The court ruled that visits would be suspended if mother had one more unsuccessful visit. If she had four successful visits, then supervised in-home visits would be permitted.

At the contested 12-month hearing in July 2020, mother had trouble connecting via Zoom, and after conferring with her attorney, decided not to listen to the proceedings because she had a headache. She submitted a two-page written statement plus photographs of the children. Her statement accused all involved of illegally removing her children and not providing proper reunification services.

6

A social worker testified that multiple visit monitors quit or refused to supervise mother's visits due to her abusive behavior, including calling one visitation monitor racial slurs. Mother was often abrasive with the minors and made inappropriate comments necessitating early termination of the visits. The social worker believed the visits were detrimental to the minors because mother continued to talk about the case or various issues that caused the minors to shut down and become nonresponsive. If the virtual visits were stopped, the social worker could pass along written communication from mother to the children. The Agency continued to recommend placing the children with father with family maintenance services and ceasing services for mother.

Mother's counsel objected to the removal and continued detention of her children as well as the adequacy of her reunification services, and argued that terminating visitation was improper. She requested that the court return the children to her custody. Because the children expressed a desire to see their mother, father objected to terminating mother's visitation, and requested that the juvenile court prescribe a path for her to visit when and if the court deemed the visits not detrimental. The minors' attorney also urged the court to continue contact between the minors and mother.

Following the hearing, the juvenile court terminated reunification services to mother, finding she had made no progress in her case plan. The court ordered the children returned to father's custody with family maintenance services. As to visitation, the court found that visitation with mother was detrimental to the minors, but granted her a visit with the minors on K.S.'s birthday within the week. If mother refrained from engaging in the detrimental behaviors identified by the social worker and in the reports, then the visits could continue; if she conducted herself in the manner described by the social worker at the hearing, then further visits would be terminated and she would be allowed to send cards or e-mails to the children through the social worker. Mother failed to object to the juvenile court's visitation order as stated. The court set the matter for a section 364 in-home review hearing.

Mother timely appealed.

## DISCUSSION

Mother contends that at the contested 12-month review hearing in July 2020, the juvenile court improperly delegated to the Agency its authority to determine whether she could have visitation with her children. While she concedes that her claim may be forfeited because she did not object to visitation on the above-stated grounds, she urges this court to exercise its discretion to consider the matter on appeal. The Agency argues the issue is forfeited given the lack of objection below. It adds that the issue is moot in light of the juvenile court's subsequent order at the six-month family maintenance review hearing in January 2021 giving mother six hours of supervised visits per month with the children.[2] Mother did not file a reply brief or otherwise address the mootness issue.

We agree with the Agency on both points. In general, a parent's failure to object or raise certain issues in the juvenile court prevents the parent from raising the issue for the first time on appeal. (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339.) Any other rule would permit a party to flout the administration of justice; the party could deliberately stand by without objection and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 412.) While it is true that we may excuse forfeiture under certain circumstances, such as when presented with an important issue of law, exercising such discretion should be done sparingly. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) We decline to exercise such discretion here.

---

[2] We granted the Agency's request to take judicial notice of the juvenile court's January 20, 2021 Findings and Order after In-Home Status Review Hearing. (Evid. Code, §§ 459, 452; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1416; *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390 [appellate courts are authorized to consider post-judgment evidence to determine whether an appeal is moot].)

In any event, even if we assume for sake of argument that the claim was properly preserved, a reviewing court may dismiss an appeal as moot if subsequent events prevent the court from granting the appellant any effective relief. (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.) In this case, the juvenile court subsequently entered a new visitation order that provides mother with six hours of supervised visits with the children. Thus, the visitation order mother challenges on appeal has been superseded and is no longer in effect. Under such circumstances, we cannot provide mother with any effective relief, warranting dismissal of her appeal.

## DISPOSITION

The appeal is dismissed.

/s/

Duarte, J.

We concur:

/s/

Raye, P. J.

/s/

Krause, J.

9