Filed 3/19/14  In re Jonathan H. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Jonathan H., Jr., et al., Persons Coming Under the Juvenile Court Law. | B246776 |
| | (Los Angeles County Super. Ct. No. CK96368) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| Tonja J. et al., | |
| Defendants and Appellants. | |

Appeal from orders of the Superior Court of Los Angeles County, Donna Levin, Juvenile Court Referee.  Affirmed.

Tonja J. and Darrell V.R., in pro. per., for Defendants and Appellants.

Christopher R. Booth, under appointment by the Court of Appeal, for Jonathan H., Sr., Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Melinda A. Green, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

Representing themselves, Tonja J. and Darrell V.R., the maternal grandparents of Conner R.-J., Tyler J. and Jonathan H.,[1] appeal from juvenile court orders declining to place the children with them and prohibiting them from having contact with the children. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Detention of the Children and the Initial Proceedings*

On November 8, 2012 the Los Angeles County Department of Children and Family Services (Department) initiated dependency proceedings on behalf of then five-year-old Conner,[2] two-year-old Tyler and 15-month-old Jonathan pursuant to Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b) (failure to protect) and (j) (sibling abuse or neglect).[3] According to the maternal grandparents, the children and their mother, Ashlee J., had been living in the maternal grandparents' home for 10 months. The father of Tyler and Jonathan, Jonathan H., Sr. (Father), had moved out three months earlier because he did not get along with Tonja.

On November 1, 2012 Tonja noticed bruises on the children. Ashlee became argumentative when Tonja asked about the bruises and moved into a motel with the children and Father. A few days later Ashlee told Tonja the family was moving out of state. On November 5, 2012 Tonja requested Tyler and Jonathan's daycare center inspect them for bruises. After bruises and pinch marks were found on them, all three children were detained. Conner was then released to his father, Thomas R., who had been awarded primary physical custody of Conner in December 2011 during a protracted and bitter custody dispute. On November 6, 2012 Tyler and Jonathan were placed with Tonja. Later that day Ashlee obtained a temporary restraining order against Tonja in Los

---

[1] Darrell is Tonja's fiancé. However, all parties refer to Darrell as the maternal step-grandfather.

[2] Ashlee J., the children's mother, was 16 years old when she became pregnant with Conner.

[3] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Angeles Superior Court under the Domestic Violence Protection Act (Fam. Code, § 6200 et seq.) based in part on the allegation Tonja had attacked her when she was pregnant with Jonathan.[4] A hearing date was set for Ashlee's request for a continuing domestic violence restraining order for November 26, 2012.

The detention hearing in juvenile court was held on November 8, 2012. At the outset the court excused Tonja from the proceedings in light of the temporary restraining order. Counsel for Father argued the children should not be placed with Tonja, explaining Ashlee and Father had a bad relationship with her and she had made false allegations about Father (for example, Tonja claimed Father had pointed a gun at her). Counsel asserted placement with Tonja might impair Father's ability to reunify with his children. Ashlee's counsel joined the argument, suggesting Tonja may have pinched the children "and then called it in. She had access to the children and would have been able to do that and known that there would be a bruise two days later." The Department requested the children remain in their current placements notwithstanding the temporary restraining order. Finding the Department had made a prima facie case for detaining the children, the juvenile court ordered Conner to be released to Thomas and temporary placement and custody of Tyler and Jonathan to be vested with the Department with discretion to release them to any appropriate relative or non-related extended family member. Pursuant to the juvenile court's exclusive jurisdiction to issue domestic violence restraining orders after the filing of a dependency petition (§ 213.5), the court ordered Tonja back on November 26, 2012 for the order to show cause hearing on Ashlee's request for a restraining order.

On November 9, 2012 Tyler and Jonathan were removed from Tonja and placed in foster care. The Department explained it learned Tonja had a criminal conviction and was concerned because Father had adamantly insisted the children be removed from Tonja's care. Additionally, under the mistaken belief the temporary restraining order

---

[4]    Although the children were identified as additional protected parties in section three of Judicial Council Form DV-110, Temporary Restraining Order, Tonja was ordered to stay away from only Ashlee, not the children.

prohibited Tonja from having contact with the children, the Department explained it wanted any apparent violation of that order to cease as soon as possible.

On November 26, 2012 Tonja and Darrell filed a de facto parent request for Conner and a separate de facto parent request for Tyler and Jonathan.

2. *The Jurisdiction and Disposition Hearings*

In a report for the jurisdiction and disposition hearings set for December 19, 2012 the Department recommended Conner, Tyler and Jonathan be declared dependent children of the court; Thomas be granted full physical custody of Conner; Tyler and Jonathan remain temporarily placed with Thomas;[5] and Ashlee and Father receive reunification services. The Department did not recommend placement with Tonja because it believed such placement "would in fact severely impede on the parents' reunification process." The report stated Ashlee intended to obtain another restraining order because Tonja had been "continually harassing them by driving by the current placement as well as stalking her at her current location." Describing Tonja as manipulative and an alcoholic, Ashlee told the Department she had been physically abused as a child by both Tonja and her father and her father had been incarcerated for domestic violence against Tonja.

The report also included an excerpt from a transcript in the family law proceeding between Ashlee and Thomas detailing Tonja's involvement in the custody battle over Conner.[6] (The transcript from the December 15, 2011 hearing on Thomas's request to modify child custody and visitation and orders from December 16, 2011 and June 21, 2012 were provided to the juvenile court.) According to the family law judge then presiding over the matter, "'[W]e're close to 40 [c]ourt appearances on this case. This is a very unusual case unfortunately. And unfortunately for this child [(Conner)] it's been

---

5       Although temporarily placed with Thomas, Tyler and Jonathan were on an extended visit with a paternal aunt, whom the Department was evaluating for placement.

6       According to Ashlee, Tonja "influenced" Ashlee "to start the 'custody battle'" and told her "to say things that were not true." Ashlee admitted, however, she had been the victim of domestic violence in her relationship with Thomas.

4

marked by acrimony, bitterness, voluminous filings, and [there have] been many accusations. . . . [S]ince the inception . . . there has been an ongoing war waged by [Ashlee], but chiefly by [Ashlee's] mother, [Tonja]. . . . [Tonja] has had considerable impact on this case. She has filed numerous declarations in this case. September 13, 2010, accusing Mr. Spiller then the minor's counsel of all types of horrific acts. Even recently, October 17, 2011 for this hearing, Commissioner Friendenthal has been out of this case since December of 2008, and yet the opening salvos of [Tonja's] declaration . . . three years later, is accusing Commissioner Alan Friendenthal of misleading this Court. . . . Again, the parties especially when [Tonja] is not in the courtroom, they have been able to reach stipulations.'" The court granted Thomas's request for modification in its entirety, awarding him primary physical custody and, although Thomas and Ashlee had joint legal custody, giving him "tiebreaking authority" if the parents could not reach an agreement on issues related to Conner. On June 21, 2012 a new family law judge hearing the matter denied Thomas's request to grant him sole legal custody of Conner. The court ordered the parents to select a co-parenting therapist and that Conner's name be changed on his birth certificate to include Ashlee's family name.

Describing Ashlee's relationship with Tonja as "clearly toxic for everyone including the children," the Department report concluded "mother's relationship with the maternal grandmother must be severed in order for mother and her children to live happily as a family" notwithstanding "the children, especially Conner, have a strong bond with the maternal family."

At the outset of the December 19, 2012 jurisdiction and disposition hearing, the juvenile court denied Tonja and Darrell's petitions for de facto parent status. After hearing argument, the court sustained an amended petition finding Tyler and Jonathan had been physically abused, which placed all three children at risk of abuse: "So I have two parents who knew that their children had bruises. I don't know who caused the bruises. I don't know if it was the grandmother, trying to perpetrate something on the parents, but in that case, why are these children with the grandmother if they know the grandmother's propensity. The parents are responsible here, and the children had

5

multiple bruises and a black eye, and as I said, pretty serious." The court ordered Tyler and Jonathan suitably placed and reunification services for Ashlee and Jonathan. With respect to Conner the court terminated jurisdiction with a family law order giving Thomas sole physical custody, Ashlee and Thomas joint legal custody, and Ashlee unmonitored day visits.

    3. *The Second Restraining Order and No Contact Order of the Juvenile Court*

Although the record on appeal does not include all the relevant documents, it appears Ashlee obtained a second temporary domestic violence restraining order against Tonja from a family law judge on December 18, 2012; but the matter was again transferred to the juvenile court on December 20, 2012. On December 31, 2012 Tonja filed a "supplemental declaration" in opposition to the request for a restraining order, seeking dismissal and sanctions. Tonja argued she had not received notice of the proceeding and disputed each of Ashlee's allegations. Providing dates and police report numbers, Tonja contended Ashlee was the victim of domestic violence at the hand of Father and Father had assaulted and threatened Tonja on several occasions. Tonja submitted numerous documents, including a 2004 restraining order obtained by the mother of Father's former girlfriend and records showing Father had been convicted of possessing marijuana.

On January 7, 2013 the juvenile court held an order to show cause hearing on Ashlee's new request for a restraining order. Ashlee informed the court Tonja and Darrell, who was a police officer, followed her wherever she went and made false allegations to the Department. The court heard testimony from Tonja and Darrell and engaged in robust exchanges with them, as well as the maternal aunt who also attended the hearing—prompting the court to remark at one point, "nobody listens, obviously, in this entire family." After testimony and argument, the court ordered that no one in the maternal family have contact with Conner, Tyler and Jonathan, and also ordered Ashlee not to contact the maternal family as they contended she had. The court found it would be detrimental to Ashlee and Jonathan's reunification efforts for Tonja to be near the children and Darrell had no right to be near them because he was not related.

6

On January 9, 2013 Tonja and Darrell filed a notice of appeal from the November 8, 2012, December 19, 2012 and January 7, 2013 orders. The notice stated, "[The juvenile court] made orders that we not be allowed any contact with my grandchildren without any notice, and unilaterally transferred TRO cases to her court with no jurisdiction."[7]

## CONTENTIONS

Tonja and Darrell contend they were entitled to have the children placed with them in accordance with the relative placement preference in section 361.3. They also contend the no contact orders were made without a fair hearing and without jurisdiction and request they be quashed.[8]

## DISCUSSION

1. *This Court's Review Is Limited to the Record on Appeal*

Tonja and Darrell's contentions and arguments on appeal have evolved based on events occurring after January 7, 2013, the date of the last of the three orders from which they appeal. For example, in their opening brief they requested this court order "an entirely new Dependency Investigative report be completed"; "all allegations of Domestic Violence be investigated"; "[t]he therapist for [Ashlee] be ordered to report on her findings regarding Domestic Violence between the parents"; and "[u]pon a finding of

---

[7] Father also filed a notice of appeal. However, his appointed counsel filed a brief that raised no issues, and Father submitted no additional letter identifying any contentions he wished to raise on appeal. Accordingly, his appeal is dismissed as abandoned pursuant to *In re Phoenix H.* (2009) 47 Cal.4th 835 and *In re Sade C.* (1996) 13 Cal.4th 952.

[8] Tonja and Darrell also ask the finding they were "'toxic to reunification'" be stricken. Because Tonja and Darrell were not permitted access to the confidential juvenile record pursuant to section 827, they are unable to direct this court to the order in which the finding was purportedly made; and we have not located any such order or finding. To the extent the juvenile court used the word "toxic," we suspect it was a comment made during a hearing and not reflected in a minute order. In any event, there is ample evidence to support the court's conclusion the contentious relationship between the parents, on one hand, and the grandparents, on the other hand, would be counterproductive to reunification.

7

Domestic Violence, the parents be ordered into aggressive and long-term treatment to deal with this matter." In their reply brief they withdrew these requests because they had "been resolved satisfactorily" by the Department. Then, after criticizing the Department for failing to provide this court with information outside the record on appeal, they stated, "Appellant[s] are concerned by the [Department's] refusal to share this follow-up report with this court, however, it does show that several of the issues requested by the Appellants have been honored by [the Department], and that [the Department] did, actually, listen to the concerns of the Appellants and by doing so, the progress of the parents has finally reached a point where their visits have been liberalized, and the Appellants have seen great improvement in the parent."

It is, of course, encouraging that Ashlee and Father appear to be making progress. But, even if this validates some of the concerns Tonja and Darrell have raised, we are limited to reviewing the juvenile court's orders based on the record before it at the time those orders were made: "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal." (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.) This general rule is applicable to juvenile dependency appeals. (*Ibid.*) "Various provisions of the [juvenile dependency] statutory scheme strictly control the timing and manner of appeal or writ review of the critical findings and orders that can culminate in an order terminating parental rights, their primary goal being to expedite finality and thereby achieve permanency for the child." (*Id.* at pp. 405-406.)

The proper vehicle to bring new developments to the juvenile court's attention, and to this court on appeal, is a section 388 petition. Indeed, it appears Tonja filed a section 388 petition on February 20, 2013 to modify certain juvenile court orders based

on the more recent events described in the reply brief.  The petition was denied on March 20, 2013 on the ground the proposed modification would not promote the best interest of the children and would impede family reunification services.  Tonja has not appealed from that order.

2. *The Juvenile Court Did Not Abuse Its Discretion in Declining To Place the Children with Tonja and Darrell*

a. *The statutory preference for relative placement and standard of review*

Under section 361.3, subdivision (a), "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative" when a child is removed from the physical custody of his or her parents pursuant to section 361.  In determining whether placement with a relative is appropriate, the Department and the juvenile court are to consider, among other factors, the best interests of the child, including the child's special physical, psychological, educational, medical or emotional needs; the wishes of the parent, the relative and child, if appropriate; the nature and duration of the relationship between the child and the relative; and the relative's desire to provide legal permanency for the child if reunification is unsuccessful.  (§ 361.3, subd. (a).)  Additionally, the social worker and the court assess the ability of the relative to facilitate court-ordered reunification efforts with the parents, visitation with the child's other relatives and implementation of all elements of the case plan.  (§ 361.3, subd. (a)(7).)

"'Preferential consideration' means that the relative seeking placement shall be the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)  The relatives entitled to preferential consideration for placement are "an adult who is a grandparent, aunt, uncle, or sibling."  (§ 361.3, subd. (c)(2).)

We review the juvenile court's decision on relative placement for abuse of discretion.  (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 ["We are persuaded that the abuse of discretion standard should be applied to the review on appeal of the juvenile court's determination regarding relative placement pursuant to section 361.3.  Such a determination, like decisions in custody cases, involves primarily factual matters and a

9

judgment whether the ruling rests on a reasonable basis."]; accord, *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420 ["juvenile court's placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse"].)

   b.  *The juvenile court's decision not to place the children with Tonja and Darrell was reasonable*

Using the governing reasonableness standard, we find no abuse of discretion here: "The relative placement preference . . . is not a relative placement *guarantee* . . . ." (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

The evidence before the juvenile court at the December 19, 2012 jurisdiction and disposition hearing established none of the parents wanted the children placed with Tonja and there was a long history of strife among them that threatened parent-child reunification, demonstrated in part by the protracted and acrimonious custody battle over Conner. Whatever procedural flaw may have existed in those family law proceedings, the juvenile court reasonably concluded there was intense and bitter disharmony between Ashlee and Tonja, as well as Tonja and Father, which would undermine reunification efforts—a primary goal of the dependency system at this stage of the proceedings. (See § 202, subd. (a) ["[i]f removal of a minor is determined by the juvenile court to be necessary, reunification of the minor with his or her family shall be a primary objective"]; *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 302.) Tyler at two years old and Jonathan Jr. at 15 months old were still so young that the duration of the relationship between them and Tonja was not a significant factor. As for Conner, although he was five years old and had developed a bond with Tonja and Darrell, Thomas was a nonoffending parent who had been awarded custody of Conner in the family law proceedings. Section 361.3's preference for relative placement is not superior to a parent's right to custody. Under these circumstances placement of Conner with anyone but Thomas would have been an abuse of the court's discretion.

10

3. *The Juvenile Court Had Jurisdiction To Order No Contact Between the Children and the Maternal Grandparents and Provided Them an Opportunity To Be Heard*

Tonja and Darrell contend the juvenile court failed to provide them with an opportunity to be heard before it ordered no contact between them and the children. Noncustodial grandparents of dependents of the juvenile court, however, have "no substantive due process right to free association with the minors, or to maintain a relationship with them. The rights of grandparents to assert control over their grandchildren are restricted by state juvenile jurisdiction to determine and protect the best interests of dependent minors." (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1508.) Notwithstanding Tonja and Darrell did not have a right to a hearing, the court provided them an opportunity to be heard on January 7, 2013. Both Tonja and Darrell testified— and repeatedly argued—with the court before it concluded, "I know that those children will not be safe if I don't make these orders for now. I am not saying that this is going to go on and on."

Tonja and Darrell also contend the juvenile court acknowledged at the January 7, 2013 hearing that it did not have jurisdiction over them; thus, they argue, it did not have the power to make the no contact order. Read in context, however, the court merely stated Tonja was not a party to the case, which she is not.[9] Tonja's status as a nonparty, however, did not place her outside the reach of the juvenile court with respect to orders concerning the children. (See *In re Brittany K.*, *supra*, 127 Cal.App.4th at p. 1508.) The court's no contact order is essentially an order that the grandparents do not have a right to visitation, which is clearly within the purview of the court. (See § 361.2, subd. (i) ["[w]here the court has ordered removal of the child from the physical custody of his or her parents pursuant to Section 361, the court shall consider whether the family ties and best interest of the child will be served by granting visitation rights to the child's

---

[9] After the court ordered no contact between the maternal family and the children, Tonja asked, "So you have jurisdiction over me right now? Am I a party to this case?" The court replied, "No, you are not."

11

grandparents"]; see *In re Marriage of Harris* (2004) 34 Cal.4th 210, 219 ["[g]randparents' rights to court-ordered visitation with their grandchildren are purely statutory"].)  Moreover, there is no question the court had the power to direct Ashlee or the foster parents to prohibit contact between the children and the grandparents.  (See § 245.5 ["In addition to all other powers granted by law, the juvenile court may direct all such orders to the parent, parents, or guardian of a minor who is subject to any proceedings under this chapter as the court deems necessary and proper for the best interests of . . . the minor.  These orders may concern the care, supervision, custody, conduct, maintenance, and support of the minor . . . ."].)  On this record the juvenile court did not abuse its discretion in ordering no visitation between the grandparents and the children.  (Cf. *In re Mickel O.* (2011) 197 Cal.App.4th 586, 614 [grandfather accused social workers of bias against him; in affirming denial of section 388 petition for placement or unsupervised visitation court found, "We recognize that reasonable minds might differ as to the correct outcome in this case, but we cannot say the juvenile court abused its discretion"].)[10]

## DISPOSITION

Jonathan H., Sr.'s appeal is dismissed as abandoned.  As to Tonja J. and Darrell V.R., the juvenile court's orders are affirmed.


PERLUSS, P. J.

We concur:


WOODS, J.                    ZELON, J.

---

[10] Although we have addressed the merits of the January 7, 2013 no contact order, the issue was largely mooted on March 3, 2014 when, after a hearing at which Tonja was present, the juvenile court permitted Tonja to have monitored contact with the children.

12