Filed 5/14/14  In re P.H. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>In re P.H. et al., Persons Coming Under the Juvenile Court Law.<br><br>**CONTRA COSTA CHILDREN & FAMILY SERVICES BUREAU,**<br><br>Plaintiff and Respondent,<br><br>v.<br><br>**S.M.,**<br><br>Defendant and Appellant.</td><td>A138711<br><br>(Contra Costa County Super. Ct. Nos. J1101697, J1200937, J1200938 & J1200939)</td></tr>
</table>

Appellant S.M. (Mother) is the mother of four children—P.H., T.M., P.L., and R.M. (collectively, Minors).  She challenges the juvenile court's jurisdictional and dispositional orders.  We affirm.

BACKGROUND

*Summary of Prior Dependency Proceedings*

P.H. (born in November 1998) was under a probate guardianship from 1999 through October 2011.  In 2011, P.H. began living with Mother.  The present Welfare and Institutions Code[1] section 300 petition was filed on P.H.'s behalf in San Francisco County in September 2011, based on allegations Mother was neglecting his mental health needs and Mother's home presented a health and safety risk.  P.H. was adjudged a

---

[1]  All further undesignated section references are to the Welfare and Institutions Code.

1

dependent of the court in November 2011 and the matter was transferred to Contra Costa County.

T.M. (born in February 2004) and P.L. (born in April 2006) were previously detained due to allegations of sexual abuse of T.M. by one of her two alleged fathers and Mother's failure to protect T.M. Mother ultimately reunified with her children and the dependency proceeding was closed in April 2010.

R.M. (born in January 2010) had not been the subject of a dependency proceeding prior to the present case.

*Subsequent Petition On Behalf of P.H. and Initiation of
the Present Proceedings Involving T.M., P.L., and R.M.*

In May 2012, the Contra Costa County Children & Family Services Bureau (Bureau) requested issuance of a warrant for P.H. after he ran away from Mother's home. On June 10, Mother was arrested for possession of stolen property. Although Mother had previously claimed she did not know P.H.'s whereabouts, P.H. was present when Mother was arrested. According to the police report, the police found Mother, P.H., and an adult male near Mother's car, which had broken down in the street. P.H. initially gave a false name to the police, but he was taken into custody when his true identity was discovered. The police determined there was stolen property inside Mother's car. Mother admitted she knew the property was stolen, uses drugs, and was going to sell the stolen property to someone she met through a drug dealer. Moreover, Mother did not have proper registration information for the car, and her driving privileges had been suspended. The adult male, subsequently determined to be living with Mother, had "a glass homemade pipe that is used for consumption of a controlled substance" in his pants pocket.

On June 11, 2012, Mother told a social worker the adult male had stolen the property from a neighbor's house and she was going to throw the property away. Subsequently, Mother admitted P.H. was also involved in the theft.

On June 12, 2012, the Bureau filed a supplemental petition on behalf of P.H., alleging that the previous family maintenance plan had failed because Mother was

2

arrested for possession of stolen property while P.H. was present and Mother had a "serious and chronic substance abuse problem" that placed P.H. at risk.[2]

Furthermore, on June 15, 2012, original petitions pursuant to section 300 were filed on behalf of each of the younger three children. The Bureau alleged under section 300, subdivision (b) ("Failure to Protect"), that the younger three children had suffered, or there was a substantial risk they would suffer, serious physical harm or illness as a result of the failure or inability of Mother to supervise or protect them adequately and due to her inability to provide regular care due to her substance abuse. Specifically, the petition alleged Mother "has a serious and chronic substance abuse problem that impairs her ability to provide appropriate care and supervision and places the child at substantial risk for serious physical harm and neglect." Based on the June 10 incident, the Bureau also alleged under section 300, subdivision (j) ("Abuse of Sibling") that P.H. had been abused or neglected, and there was a substantial risk that the younger children would be abused or neglected as well.

Mother was not present at the June 18, 2012 detention hearing. The Minors were detained with supervised visitation with Mother. Mother was referred for alcohol and drug testing and substance abuse treatment, and the case was set for a jurisdictional hearing on June 25.

On June 20, 2012, the social worker spoke with T.C., Mother's sister, who said Mother has struggled with drug addiction for several years; the sister said she believes Mother currently abuses methamphetamine. She reported that "several family members" had expressed concern about Mother's drug use. T.C. also described a visit to Mother's home during which she found the home dirty and in disarray; she believed Mother was

---

[2]   On March 5, 2014, this court took judicial notice of a November 20, 2013 minute order dismissing P.H.'s section 300 dependency proceeding; the order reflects that P.H. is presently a ward of the court under section 602. This arguably renders this appeal moot as to P.H. (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1417.) However, we need not determine whether it would be appropriate to dismiss the appeal as to P.H. on the ground of mootness, because the juvenile court's orders as to P.H. are properly affirmed under the same analysis applicable to the other Minors.

3

under the influence based on Mother's behavior and demeanor. The sister also reported that T.M. and P.L. had missed school; T.M. had missed more than a month of school. T.C. also reported that P.H.'s father told her that P.H. called him after the June 2012 arrest and told him that Mother was using methamphetamine and that Mother would point out the homes she wanted P.H. to burglarize.

P.H. told the social worker his siblings were not attending school because they were sick and he was not attending school because another student threatened him. He denied anyone in the home used drugs. Mother denied using drugs and told the social worker she took the Minors out of school because P.H. was involved in a gang and a kid threatened to shoot him. P.L. told the social worker he did not feel safe in Mother's home and there was no food in the home.

Due to various delays, the contested jurisdictional hearing was eventually moved to November 19, 2012. Mother failed to appear at two prior hearings at which her counsel expected her to appear, and at the November 19 hearing, Mother's counsel indicated that Mother had been present earlier but had left. Counsel stated, "Your Honor, my client was present outside of the courtroom, and she had left her file in a vehicle that transported her here. She advised me she was trying to contact that person to return so she could pick up her file. Unfortunately, we have been waiting, and I don't yet see her outside, so I am prepared to go forward." On the Bureau's motion, the juvenile court amended the petitions involving Minors to allege, "the mother has a history of substance abuse which places the child at risk of harm." The court sustained that allegation as to each of the Minors and dismissed the other allegations.

*The Juvenile Court's Disposition*

After continuances, the disposition hearing was set for January 31, 2013. Mother failed to appear and her counsel requested a hearing for withdrawal from representation. After further proceedings, counsel did not withdraw and the matter was set for a contested disposition hearing on March 18.

At the disposition hearing, the juvenile court received the Bureau's disposition report into evidence, and heard testimony from Mother and a social worker, as well as

brief testimony from T.M. that she would prefer to live with her godmother.  The juvenile court adopted the Bureau's recommendations, adjudged or continued the Minors as dependents of the juvenile court, and found by clear and convincing evidence there is or would be substantial danger to the Minors if they were returned to Mother's custody.

This appeal followed.

DISCUSSION

Mother contends the evidence did not support the juvenile court's jurisdictional findings or the court's custody order following the dispositional hearing, and the juvenile court made other errors in its disposition.

I. *Jurisdictional Findings*

At the outset, the Bureau contends Mother forfeited her argument that insufficient evidence supports the juvenile court's jurisdictional findings, because Mother failed to specify those grounds in objecting to the court taking jurisdiction on November 19, 2012.  However, Mother was not obligated to object to preserve her claim of insufficiency of the evidence.  As pointed out in *In re Brian P.* (2002) 99 Cal.App.4th 616, 623, " 'Generally, points not urged in the trial court cannot be raised on appeal.  [Citation.]  The contention that a judgment is not supported by substantial evidence, however, is an obvious exception to the rule.'  [Citation.]"  In *Brian P.*, the court held that, while a parent may waive an objection that an adoption assessment does not comply with statutory requirements, a claim that there was insufficient evidence of adoptability is not subject to forfeiture.  (*Ibid.*)  The same principle applies to the sufficiency of the evidence claim in the present case.

On the merits, we review the record to determine whether substantial evidence supports the juvenile court's jurisdictional findings.  (*In re James R.* (2009) 176 Cal.App.4th 129, 134-135 (*James R.*).)  "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence.  Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding.  [Citations.]  [¶]  Substantial evidence, however, is not synonymous with any evidence.

5

[Citation.] 'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.' [Citation.] Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record. [Citations.]" (*Id.* at p. 135.)

"Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse. A jurisdictional finding under section 300, subdivision (b) requires: ' "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future . . . .' [Citation.]" (*James R.*, *supra*, 176 Cal.App.4th at p. 135.) In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) The Bureau had the burden of proving the basis for jurisdiction by a preponderance of the evidence. (§ 355, subd. (a); *In re Henry V.* (2004) 119 Cal.App.4th 522, 528-529.)

Mother disputes there was sufficient evidence of a substance abuse problem to support jurisdiction. The record plainly supports the finding that Mother has a history of substance abuse. A police report reflects that Mother admitted to an officer that she uses drugs; the juvenile court was not obligated to believe her denial that she made such a statement. An adult male who was living with her had a glass pipe in his pocket at the time of the incident. Mother's sister reported to the Bureau she believed Mother was using methamphetamine and she observed Mother under the influence. She also reported learning from P.H.'s father that P.H. told him Mother was using methamphetamine. The

6

Bureau also received "[t]wo anonymous reports . . . that mother is actively abusing illegal drugs."[3]

Mother also argues there was no evidence of *current* substance abuse at the time of the November 2012 jurisdictional hearing.[4]  In fact, the entire record gave the juvenile court sufficient basis to infer that Mother's substance abuse continued.  Only five months had passed since the June 2012 arrest, and during that time Mother was absent at multiple hearings, including the jurisdictional hearing itself.  Mother was belligerent and uncooperative with the Bureau's social worker, and she denied that substance abuse is an issue for her, despite the evidence to the contrary.  Mother's erratic and uncooperative behavior during the dependency proceedings supported a reasonable inference that her substance abuse continued.

Finally, Mother argues the Bureau failed to meet its burden of showing a specific risk of harm to the Minors as a result of Mother's conduct.  The Legislature has specifically emphasized, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child."  (§ 300.2.)  The record supported inferences that Mother's drug use created risks to the Minors due to Mother's unstable, dirty, and inadequately provisioned home environment; the people with whom Mother associated (including a drug abusing and thieving adult male who lived with Mother); the lack of school attendance, which created a greater risk of exposure to Mother's drug use; and

---

[3]   Mother made no objections to any specific hearsay evidence in the Bureau's reports. (See § 355, subds. (b) & (c).)

[4]   Mother also asserts, "the Bureau did not allege, and the court did not find, that [Mother] had a current substance abuse problem."  Mother misconstrues the Bureau's allegation and the juvenile court's findings.  The allegation and findings that "[M]other has a history of substance abuse which places the child at risk of harm" is reasonably understood to mean that the history of substance abuse creates a present risk of use and resulting harm.  Mother cites to no portion of the record wherein the Bureau argued that Mother's history of substance abuse presented a risk of harm to the Minors other than due to the risk of harm resulting from substance abuse.

7

Mother's erratic, irresponsible, and problematic behavior (including encouraging P.H. to commit burglaries, selling stolen property, and driving without a license).

Thus, the evidence supported an inference Mother's substance abuse rendered her unable to provide a home "free from the negative effects of substance abuse." (§ 300.2; cf. *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004 [substance abuse did not present adequate risk of harm where home was clean, the minor went to school and was adequately provided for, and the mother tested clean for three months before the jurisdictional hearing]; *In re David M.* (2005) 134 Cal.App.4th 822, 830 ["The evidence was uncontradicted that [the minor] was healthy, well cared for, and loved, and that mother and father were raising him in a clean, tidy home. Whatever mother's and father's mental problems might be, there was no evidence those problems impacted their ability to provide a decent home for [the minor]"]; and *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1346 ["Most critically, the social worker testified Mother did not have a drug problem that affected her parenting skills"].)

We recognize this is a somewhat close case on substantial risk of harm, because there was little direct evidence of current drug use, little new evidence developed prior to the jurisdictional hearing, and no direct evidence of drug use in front of the Minors. However, as explained above, there was extensive evidence Mother failed to provide a home "free from the negative effects of substance abuse" (§ 300.2) and the evidence supported an inference Mother's use was unabated. Substantial evidence supports the juvenile court's jurisdictional findings.

II. *Dispositional Findings*

On March 18, 2013 the court adjudged the Minors dependents of the juvenile court (or, in P.H.'s case, continued that status), found the Minors could not safely be returned to Mother's custody, and ordered a plan of family reunification.

A. *Custody*

Mother contends insufficient evidence supports the juvenile court's finding "[t]here is substantial danger to [Minors's] physical health, or would be if [Minors] were returned home, and there are no reasonable means to protect [Minors without] removal of

8

physical custody." (See § 361, subd. (c)(1).) Although the court made that finding by clear and convincing evidence (*In re T.V.* (2013) 217 Cal.App.4th 126, 135; (§ 361, subd. (c)), "on appeal from a judgment required to be based upon clear and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 519).

We conclude the custody finding is supported by substantial evidence, for largely the same reasons the jurisdictional finding is so supported. Although the dispositional hearing occurred several months later, Mother's behavior continued to be erratic, including missed visits with Minors. Moreover, by the time of the dispositional hearing, Mother had refused to participate in drug treatment or testing, despite receiving several referrals. That refusal frustrated the Bureau's ability to prove current substance abuse with *direct* evidence, necessitated the juvenile court's reliance on circumstantial evidence, and provided additional support for an inference that Mother's drug use continued unabated. At the dispositional hearing, the social worker testified, "[Mother] presents to me very erratically. And there is no reason for her not to have been drug testing, other than that she possibly continues to use methamphetamines. [¶] The children were detained on the basis of that information being solid enough for the [Bureau] to believe that it's impacting [Mother's] decisions and her parenting. [¶] At the time that the children were removed from [Mother], they were living with [the Maternal Grandmother] . . . and had been pulled out of school, and [Mother's] house was uninhabitable. And those are characteristics of families that are struggling with addiction and mental health problems. And I think the combination of both of those has to be addressed in order for the children to remain safe." The Disposition Report stated, "[Mother's] behaviors suggest that she is emotionally very unstable. She is unable to engage in a non[-]confrontational conversation with this worker or her supervisor. At this time, all conversations with [Mother] can be characterized as aggressive." At the hearing the social worker further explained, "I cannot verbally present information . . . or

9

have a minute of uninterrupted or even 30 seconds of uninterrupted conversation where I can actually provide [Mother] with needed information."

At the disposition hearing, Mother denied having a drug problem and stated she would be willing to take a drug test that day and for a "short period." The juvenile court was not, however, obligated to believe Mother's denial, or to conclude her last minute offer to participate in limited drug testing outweighed the evidence that Mother's unresolved drug problem undermined her ability to parent the Minors safely or her entire prior history, which the court could properly consider as evidence of her likely future conduct. Neither was the court obligated to give determinative weight to the fact that Mother had a number of positive and appropriate visits with the Minors, especially where she missed approximately half the scheduled visits between June 2012 and March 2013 and was "typically" late when she did make the visits. Mother presented explanations for missed visits and other circumstances in her testimony, but the juvenile court was not obligated to accept those explanations as credible or adequate.[5]

The juvenile court concluded, "given [Mother's] erratic behavior, which is consistent with a substance abuse problem, given all of the statements of the family members, her own admission, and the fact that she was found at the time when there was a smoking device, there is more than ample evidence in the record to support a conclusion that Mother has a substance abuse problem." The evidence supports that conclusion and the court's further finding that Mother's substance abuse presented a substantial danger necessitating removal of the Minors from Mother's physical custody.

B. *Reasonable Efforts*

Under section 361, subdivision (d), the juvenile court was obligated to determine "whether reasonable efforts were made to prevent or to eliminate the need for removal of

---

**5**    Mother also references her testimony at the disposition hearing expressing concern about the safety of the Minors in foster care. However, she fails to present authority that a dangerous foster care placement provides a basis to decline to remove a minor from the physical custody of a parent where that custody presents a substantial danger to the minor. An obvious and appropriate Bureau response to an unsafe foster care placement is to change to a different foster care placement.

the" Minors and "state the facts on which the decision to remove the [Minors] is based." Mother contends the juvenile court erred in failing to state the basis for its finding and the error was prejudicial because "there were less drastic alternatives to removal."

We conclude any error by the juvenile court in failing to state the basis of its finding was harmless because it is not "reasonably probable" (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218) the outcome would have been different had the court expressly stated the basis for its finding. It is clear the juvenile court found credible the Bureau's testimony about Mother's uncooperativeness and erratic behavior, believed Mother was still using drugs, and was troubled by Mother's refusal to participate in drug treatment. In that context, it is clear the juvenile court's reasonable services finding reflects the court's determination that Mother's unwillingness to address her drug problem or cooperate with the Bureau made options short of removal unviable.

Mother contends the Minors could have safely been returned to her care because she had new housing and expressed a willingness to cooperate with the Bureau and comply with the court's orders. However, the juvenile court was not obligated to accept those assurances as credible or adequate, in light of Mother's record of uncooperativeness and her unwillingness to accept anything more than a "short period" of random drug testing.

Mother has not shown a basis to reverse the juvenile court's reasonable efforts finding.

C. *Reunification Plan*

Finally, Mother contends the juvenile court failed to ensure Mother's case plan was tailored to her circumstances because the court refused to accept Mother's suggestion to have a drug and alcohol assessment and only a short period of testing, so Mother could demonstrate she did not have a current substance abuse problem.

The reunification plan "must be specifically tailored to fit the circumstances of each family [citation], and must be designed to eliminate those conditions which led to the juvenile court's jurisdictional finding." (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1777.) In the present case, the juvenile court found it had jurisdiction over the Minors

11

because Mother had a "history of substance abuse which places the [Minors] at risk of harm." As explained previously, the risk of harm arose from the evidence Mother was still abusing drugs. The juvenile court did not abuse its discretion in requiring Mother to participate in drug treatment in the reunification plan. (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006-1007; cf. *In re Drake M.* (2012) 211 Cal.App.4th 754, 770 [inclusion of substance abuse component in reunification plan error where "there is nothing in the record to indicate [Father] has a substance abuse problem"].)

DISPOSITION

The juvenile court's orders are affirmed.

 

 

_____
SIMONS, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.