Filed 12/13/21 In re A.D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re A.D. et al., Persons Coming Under the Juvenile Court Law. | B309523 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Appellant, v. M.D., Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 20CCJP03820A, 20CCJP03820B) |

APPEAL from an order of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Affirmed.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Appellant Department of Children and Family Services.

Linda B. Puertas, under appointment by the Court of Appeal, for Defendant and Appellant M.D.

William Hook, under appointment by the Court of Appeal, for Respondent H.D.

Marissa Coffey, under appointment by the Court of Appeal, for Respondent Minor A.D.

_____

In the dependency of A.D. and N.F., the juvenile court issued a disposition order removing the children from the custody of M.D. (mother) and placing them with A.D.'s paternal grandparents. (Welf. & Inst. Code,[1] § 361, subd. (c)(1).) Mother appeals, challenging the removal order for lack of substantial supporting evidence. The Department of Children and Family Services (DCFS) defends the removal order but challenges the placement order because H.D. (father) lives with the grandparents and is only allowed monitored contact with the child. A.D. agrees with father and DCFS that the removal order should be affirmed and, along with mother, supports the placement order. We find no abuse of juvenile court discretion and affirm the disposition order in its entirety.

## BACKGROUND

I.     The petition

N.F. (age 3) is A.D.'s (age 9) half sister from a different father. A.D. was previously a dependent of the juvenile court because of father's alcohol abuse and because father was arrested for driving on a suspended license while under the influence, with

_____

[1] All further statutory references are to the Welfare and Institutions Code.

2

A.D. unrestrained in the car, and then left A.D. alone in the car with the motor running for an extended period of time (case No. DK03987). When the juvenile court terminated the prior dependency, it granted mother sole physical custody of, and ordered that father have monitored visitation with, A.D.

In June 2020, DCFS received a referral of general neglect. An employee of the hotel where mother and the children were living found N.F. alone in the stairwell calling for mother. The door to the family's room was ajar and A.D. was asleep. Mother and N.F.'s father, F.F., were in another room at the hotel. The hotel employee called the police.

Mother told DCFS she had no permanent address. She would allow A.D. to stay with his paternal grandfather where father also lived, despite the order limiting father to monitored visitation. Mother reasoned that A.D. wanted to stay with paternal grandfather where he was not left alone with father.

A.D. stated he enjoys being with mother. They used to spend more time together but now mother " 'goes in the bathroom to do work.' " A.D. reported he has a good relationship with father. When at grandfather's house, A.D. plays with friends who live a few houses away, listens to music with father, watches television with his grandparents, and watches YouTube. A.D. stated that father drinks beer sometimes but does not act differently when he drinks. The child felt safe there. N.F. was unable to provide a statement.

Paternal grandfather clarified that the grandparents have cared for A.D. for the majority of the child's life. A.D. primarily stays with paternal grandparents during the school year because school is nearby. When school is out, A.D. goes back and forth between mother and paternal grandparents, which schedule

makes the child feel insecure. The grandparents want A.D. to be safe and are always attentive to his needs.

Father had all of the symptoms of being under the influence of alcohol when he met the social worker. He explained he had just gotten off work and had some beer. Father described mother as very aggressive and abusive. Along with father, paternal aunt lives in paternal grandparents' house. A.D. sleeps in the grandparents' room; not with father.

Mother's friend explained that paternal grandparents, not father, are responsible for caring for A.D. The child asked mother if he could remain with paternal grandparents over the summer because he enjoyed playing with his cousins. The friend had no concerns about A.D.'s safety in paternal grandparents' house.

DCFS filed a petition naming mother and father, and alleging serious physical harm and failure to protect. (§ 300, subds. (a) & (b)(1).) The juvenile court detained A.D. from father, placed him in the supervision of DCFS, and released both children to mother.

II.     The jurisdiction order

The social workers had difficulty interviewing mother for the jurisdiction and disposition report. The family was not at the address where they purportedly lived. Between late August and mid-September 2020, mother made herself unavailable to DCFS and prevented the social worker from having access to the children. She postponed meetings and drug tests, and either did not respond to calls and texts, or agreed to allow the social worker to interview the children while avoiding scheduling a day and time.

4

Law enforcement notified DCFS in August 2020 that mother and F.F. created a disturbance at a motel. A.D. ran to the lobby asking for help because a man was hitting mother. Mother claimed F.F. pulled her hair. Law enforcement was called to a different hotel in September 2020 where A.D. reported that F.F. assaulted mother by slamming her into a bathtub. The police filed a report of suspected child abuse. Mother denied to the investigating social worker that she left the children unsupervised or that she had an open dependency case. Mother gave an explanation for the bathtub incident that did not implicate F.F. While mother was relating her story to DCFS, F.F. called her. The social worker overheard F.F. ordering mother not to tell DCFS what happened. After that, mother denied that anything occurred. Mother relies on F.F. for financial support.

Mother did not allow the social worker to interview A.D. alone. Nonetheless, A.D. told the social worker that he did not like the way F.F. treats mother, claiming F.F. was mean to her and scared him sometimes. A.D. described the bathtub incident: Mother was in a fetal position in the bathtub yelling for help as F.F. tried to get keys from her. Hearing mother yelling, A.D. ran into the bathroom to pull F.F. off mother. He then ran to the front desk crying that F.F. was beating his mother up. N.F. was watching cartoons at the time. A.D. recalled another incident a month earlier while N.F. was taking a bath. F.F. slapped mother and told A.D. to leave the bathroom. Mother then interrupted the interview to ask A.D. about that event, at which point A.D. became emotional and ran out of the room. Mother then claimed she remembered the earlier incident and gave another innocent, alternative explanation.

At the jurisdiction hearing, the juvenile court sustained counts b-1 and b-6 in the amended petition finding true that: in June 2020, mother failed to provide appropriate care and supervision because N.F. was found wandering in the stairway and A.D. was asleep in a motel room without adult supervision; and mother and F.F. have a history of engaging in violent altercations, which A.D. witnessed. (§ 300, subd. (b)(1).) The court dismissed the petition's counts naming father and so he is nonoffending. The court ordered the children to remain released to mother under the supervision of DCFS.

III.    The disposition order

Finding it had insufficient information to hold the disposition hearing, the juvenile court continued it to allow DCFS to reassess placement with mother and to evaluate paternal grandparents for placement there under a home-of-father order. The court also allowed father to have monitored visits in paternal grandparents' home. Mother indicated she was staying in a hotel in Hollywood and so the court ordered DCFS to provide hotel vouchers to mother.

DCFS's ensuing report reflected that mother was moving out of her hotel but had provided no information about where she was going. She agreed to allow the social worker to interview the children but did not respond to numerous text requests to share their location. Finally, A.D. told the emergency social worker the name of their hotel.

Father told DCFS that A.D. was staying with paternal grandparents. Mother was two days late to pick the child up. Father described why he believed mother was using methamphetamines.

Step-maternal grandmother was unable to reach mother. That grandmother knew mother abused substances when mother was with father.

DCFS recommended that the juvenile court remove the children from mother's care. Mother had not made contact in a week and DCFS was concerned about domestic violence, possible substance abuse, and lack of protection for the children. A.D. had witnessed at least two incidents of domestic violence and N.F. is very young and needs the care of a sober and available parent. DCFS was unable to provide hotel vouchers to clients and referred mother to social services but they only offered vouchers for two weeks. Mother rejected DCFS's referrals to shelters.

Paternal grandfather was willing to care for both children and to be considered as a placement for them, even if that meant father would be required to move out. A.D. was never left alone with father; paternal grandparents stayed with A.D. whenever he spent time with father. DCFS found paternal grandparents' home to be cluttered and recommended that it be cleaned up for N.F., who is a toddler.

Father was willing to move out of the home to enable paternal grandparents to care for both the children. Father had not completed any of the programs the juvenile court ordered during A.D.'s previous dependency and so DCFS continued to be concerned about father's unresolved alcohol abuse. Paternal grandfather also viewed father's drinking as a problem.

At the disposition hearing, the juvenile court found that "circumstances are such that there is an incredible amount of disorganization to mother's life. It's hard to determine from one date to the next where she'll be with these children." The court ordered both children removed from mother's custody—noting

7

A.D. had already been removed from father—ordered N.F. removed from her father, and placed both children in the home of paternal grandparents. The court did not require father to move out of the home but ordered that he not be alone with the children. The court also ordered family reunification services for both mother and father. Mother, DCFS, and father appealed.[2] We appointed counsel for the children.

## DISCUSSION

I.    No abuse of discretion in removing the children from mother's custody.

When a child has been adjudged a dependent of the juvenile court under section 300, the juvenile court conducts a disposition hearing at which it decides, among other things, whether the child will remain in the parent's physical custody during the period of the court's supervision. (§ 361, subd. (a); *In re N.M.* (2011) 197 Cal.App.4th 159, 169.) Subdivision (c)(1) of section 361 authorizes the court to remove a dependent child from the physical custody of the parent with whom the child resides if it finds by clear and convincing evidence that there is or would be a substantial danger to the child's physical or emotional well-being if not removed, and there are no reasonable means to protect the child without removal.

In deciding whether to remove a child from parental custody, " '[t]he [juvenile] court may consider a parent's past conduct as well as present circumstances.' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.) The parent need not be dangerous,

_____

[2] Father's appeal was dismissed but he filed a respondent's brief in this appeal.

and the child need not have been actually harmed before removal is appropriate. " 'The focus of the statute is on averting harm to the child.' " (*In re N.M.*, *supra*, 197 Cal.App.4th at p. 170.)

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' " (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.) We review the disposition order, including a disposition order removing a child from a parent's physical custody, for an abuse of discretion (*In re K.T.* (2020) 49 Cal.App.5th 20, 25), and we review for substantial evidence the findings of fact on which the removal order is based (*ibid.*). When reviewing a finding that requires proof by clear and convincing evidence, such as here, we consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

Mother contends that the only reason the juvenile court removed the children from her custody was her poverty and homelessness. She argues that "the biggest risk to this mother and her children was her inability to find and afford stable housing." Not so.

Housing and poverty were nowhere alleged in the petition. Had mother's homelessness been the driving concern, the juvenile court would have removed the children from her custody at the outset. Instead, when it detained A.D. and N.F. and then when it first sustained the petition, the court did *not* remove the children from mother's custody, despite the fact that the family lived in hotels. Instead, the court ordered DCFS to investigate

9

whether to remove the children and to provide the court with more information on which to make its decision. When mother complained at the disposition hearing that removal was penalizing her based on her poverty and unstable housing, the court responded, "it's more than that."

Looking at the whole record (*In re Rodger H.* (1991) 228 Cal.App.3d 1174, 1183 [juvenile court may consider the circumstances of the child and family, including matters not pleaded in petition]), it shows that these children are at substantial risk of harm because mother leaves them alone unsupervised, and repeatedly exposes them to domestic violence. At least once, A.D. could have been hurt when he tried to intervene to protect mother from F.F.'s aggression. Such negligence could occur regardless of whether a family is homeless. Moreover, mother made it difficult for DCFS to supervise the children and assure their safety, not because she moved frequently, but because she refused to keep the social worker apprised of her whereabouts or to allow DCFS access to the children. The court's principal concern is a disposition consistent with the best interests of the children. (*Ibid.*) Any reasonable fact finder would have found it highly probable that these children were at substantial risk of serious harm if left in mother's dangerous and neglectful custody, irrespective of mother's poverty and homelessness. The juvenile court did not abuse its discretion in removing the children from mother's custody.

II. No abuse of discretion in placing the children with paternal grandparents.

DCFS contends that the placement order was an abuse of discretion because there is no evidence that father attempted to

resolve his alcohol-related issues that led to his loss of physical custody, and so father's presence in paternal grandparents' home poses a risk to the children.

The juvenile court has wide discretion in issuing placement orders and its determination will not be disturbed absent a manifest showing of abuse of that discretion. (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420–1421.) The test for abuse of discretion is whether the juvenile court exceeded the bounds of reason by making an arbitrary, capricious, or patently absurd determination. (*Ibid.*) We will interfere only if no judge could reasonably have made the same order. (*Ibid.*)

Section 361.3, subdivision (a) gives "preferential *consideration*" to a "request by a relative of the child for placement of the child with the relative." (Italics added.) In assessing whether to place a child with a relative, section 361.3, subdivision (a) directs the juvenile court to consider, among other things, the parent's wishes; a sibling's placement; the good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of child abuse or neglect; the nature and duration of the child's relationship with the relative; the relative's desire to care for, and to provide legal permanency for, the child; and the relative's ability to provide a safe, secure, and stable environment, exercise proper and effective care and control of the child, and to protect the child from his or her parents. This preferential consideration is not a guarantee of relative placement. The best interest of the child remains the linchpin of the court's analysis. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1068.)

Here, the evidence shows that all of the adults in the family want the children to live with paternal grandparents. A.D. has a good relationship with paternal grandparents, as he has lived there the majority of his life, trouble-free. Under this arrangement, A.D. and N.F. can be placed together. The record reflects no problem with paternal grandparents' character. Admittedly father lives in the home and there is no evidence he has addressed the causes of A.D.'s prior dependency. However, paternal grandfather was clear, and mother and her friend confirmed, that A.D. is never left alone with father and presumably N.F. will not be left alone with father either. Paternal grandparents did not work which enabled them to remain vigilant about protecting the children from father. The friend expressed no concerns about A.D.'s safety with paternal grandfather, who provided appropriate care, and never allowed unsupervised contact between father and child. Furthermore, unlike with mother, A.D. feels safe and likes living with paternal grandparents where he has food to eat, sleeps in his own bed in grandparents' room, has friends, and attends school. He had already asked mother if he could remain there during the summer. The grandparents were concerned only with the children's best interest, including school, stability, medical care, and assured that A.D. always had food. Finally, father was amenable to moving out of the grandparents' home. DCFS has supervisory authority and can always seek a juvenile court order that father move out should the necessity arise. Based on this record, therefore, we cannot say that the court abused its discretion in fashioning the placement order it did.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


WINDHAM, J.*

We concur:


EDMON, P. J.


EGERTON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.